(No. 2258.   Oct. 29, 1919.)
(On Rehearing, Feb. 24, 1920.)

## ALVARADO MIN. & MILL CO. v. WARNOCK

### SYLLABUS BY THE COURT

1.   Assignments of error not argued in brief will be deemed to be waived and will not be considered by this court.   P. 694

2.   An objection to the introduction of evidence which does not specify the particular ground on which the evidence is objectionable does not call the trial court's attention to the matter ·to be decided, and on appeal will be treated as if no objection to such evidence had been made.        P. 695

3.   Where the evidence shows that the defendant, without authority or right, mined, shipped, and sold ore from the plaintiff's property, the measure of damages for such conversion is the net value of the ore, and defendant is not entitled to deduct therefrom the expenses of mining, freight, and smelting charges.                               P. 698

#### On Rehearing.

4.   In an action for conversion of ore, an objection that exemplary damages recovered were not alleged was without merit, where point was not raised below.          · P. 701

Error to District Court. Otero County ; Medler, Judge.

Action by George Warnock against the Alvarado Mining & Milling Company.  Judgment for plaintiff, and defendant brings error.  Affirmed.

WALTHALL & GAMBLE, of El Paso, Tex., J. L. LAWSON, of Alamogordo, and F. C. WILSON, of Santa Fe, (D. K. SADLER, of Santa Fe, of counsel), for plaintiff in error.

· F. J. LAVAN, of Los Angeles, Cal., and A. B. RENEHAN, of Santa Fe, for defendant in error.

#### OPINION OF THE COURT

RAYNOLDS, J.   [1]  The complaint in this case alleged that the plaintiff, George Warnock, was the owner of certain mining claims; that the defendant company had removed copper ore from said claims and converted the same to its own use, without right or authority so to

do. Plaintiff asked damages for such conversion. Defendant admitted ownership in the plaintiff of the claims, but denied that the removal of such ore was without right or authority, alleging that it was operating under and by authority of certain leases and contracts set out as exhibits in its answer. Jury was waived, and the case tried by the judge, who found for the plaintiff, and assessed his damages at the sum of $3,794.55, the amount which, by amendment, without objection, the plaintiff at the beginning of the trial was granted leave to insert in his complaint as damages. From such judgment the defendant company sued out a writ of error to this court, and assigned 15 errors as ground for reversal, only 3 of which need be considered; the others being treated as abandoned because not argued in the brief. Klasner, v. Klasner, 23 N. M. 627, 170 Pac. 745; Clark v. Queen City Insurance Co., 22 N. M. 387, 163 Pac. 371.

[2] Plaintiff in error in its first two assignments urges that the trial court erred in admitting the six statements of account taken from the books of the American Smelting & Refining Company, such statements purporting to show the settlements on ore received by said refining company from the Alvarado Mining & Milling Company, the plaintiff in error herein. It is contended that the proper foundation was not laid for the introduction of this evidence, and that the statute, Code 1915, § 2187, was not complied with. The evidence in question was taken by the deposition of a witness, and copies of what the books of the company purported to show in regard to the transaction were attached as exhibits to the deposition. The witness testified that he was the assistant manager of the accounting department of the American Smelting & Refining Company; that the books were the regular books of the company; that he had these books under his control, and that the copies attached were correct copies of what the books showed in regard to the transaction in question. The statute cited above and the so-called Shop Book Rule have been passed upon

by this court in former cases, and have been held on the one hand to supersede the common-law rule (Price v. Garland, 3 N. M. [Gild.] 505, 6 Pac. 472), and on the other hand to merely supplement the common law (McKenzie v. King, 14 N. M. 375, 93 Pac. 703). In the latter case it was held that when the clerk who kept the books is present and testifies, the other requirements of the statute can be dispensed with.

We agree with the appellee's contention that under the circumstances of this case and the manner in which a large foreign corporation keeps its books, the requirement for the introduction of them in evidence could not be complied with under our statute, and that such statute was probably only intended to prevent fabrication of testimony by a party to the suit. We do not deem it necessary, however, to consider the objections to this class of testimony, for the reason that no proper objection was made to its introduction. This court has held in numerous cases that only such assignments of error can be considered as were brought to the attention of the trial judge so as to enable him to correct them. Crabtree v. Segrist, 3 N. M. (Gild.) 500, 6 Pac. 202; Chaves v. Myer, 13 N. M. 368, 85 Pac. 233, 6 L. R. A. (N. S.) 793; Duncan v. Holder, 15. N. M. 323, 107 Pac. 685; Territory v. Mills, 16 N. M. 555, 120 Pac. 325. In justice and fairness to the trial court the grounds of objection should be stated in order that he may rule intelligently upon the question presented. This case is a good illustration of the justice and fairness of such a rule, and illustrates why a broad general objection to the evidence gives the trial court no notice of the vice to which the objector should seek to call the trial court's attention. The testimony was taken by deposition. The first objection was made to interrogatory 3, which interrogatory was:

"If you state that you are assistant manager of the accounting department of the same company, please state whether or not you have under your control books showing returns covering a shipment of copper ore from Alamogordo, N. M., by the Alvarado Milling & Mining Company of El Paso, Tex.,

to the smelter of the American Smelting & Refining Company in the month of July, 1917"

—to which objection was made as follows:

"Object to No. 3. No proper foundation laid. (Objection overruled. Exception.)"

The same objection was made to interrogatory No. 4, and an exception taken to the overruling of such objection. The interrogatory was:

"If you state that you have books under your control, please state whether they are the regular books of the said company, and, if so, state what they show with reference to the returns of said shipment of copper ore, and attach a copy of the return of the smelter, and show particularly the gross proceeds from the said ore, and had the said return to the officer taking these depositions, and have him mark the same 'Plaintiff's Exhibit A' and attach to these depositions."

The objection, as before stated, was:

"Object. No proper foundation laid."

What does this objection mean? Was it intended to call the court's attention to the fact that secondary evidence was being introduced where primary or the best evidence was necessary, and the absence of said primary or best evidence had not been accounted for so as to permit the introduction of secondary evidence? Was it objected to on the ground that it was hearsay evidence, or on the ground that the conditions and requirements under the statute had not been complied with to introduce shop books in evidence? The plaintiff was not endeavoring to introduce the books in question, but copies of what were shown by the books, and the objection might have meant, either that the proper foundation had not been laid for the introduction of such copies, or that the conditions required by the statute had not been complied with; that is to say that the assistant manager was not a bookkeeper within the meaning of the statute, that it had not been proven that the bookkeeper was dead, or that the company kept no bookkeeper, or that the book, a copy of which was sought to be introduced, was

not a book of original entries, or that it was not shown that the company usually kept correct books, or that the books, the copies thereof sought to be introduced, were not open to the inspection of the court, so that the court could see whether or not they were free from any suspicion of fraud, or, finally, was the objection to the evidence that the witness attempted to testify as to hearsay evidence and matters not within his own konwledge, and no foundation had been laid to show that such testimony was an exception to the hearsay rule?

The difficulty of the trial court in passing upon an objection of this kind is easily seen. The objecting party was familiar with the depositions and knew upon what ground they should be excluded. If his objection was one or all of these pointed out above, he should have made the grounds thereof a part of his objection, so that the trial court could have acted advisedly upon the matter. A motion for a new trial is no longer necessary in this jurisdiction when an exception to an adverse ruling is saved (Laws 1917, c. 42) and it is no longer necessary to point out to the trial court in such a motion the error alleged to have been made. This fact is an additional reason why in fairness to the trial judge the objector should call his attention specifically to the reason or ground for his objection. The objection, ''No proper foundation laid,'' fails to point out to the trial court with sufficient certainty and definiteness the vice which renders the evidence inadmissible, and will therefore not be considered in this court.

[3] Plaintiff in error contends that it should have been allowed to show the cost of mining the ore in question, and that the measure of damages is not the net value of the ore after deducting freight and smelting charges, but the value of the ore at the mine. This contention is based on the theory that it was not a willful and intentional trespasser but in posession of the mine under leases and contracts from the defendant in error. The facts, however, do not bear out this theory. As

shown by the exhibits attached to the answer Warnock had given one Pomeroy a right or option to purchase within a certain time the claims in question. Pomeroy was to do assessment work for two years. The option was recorded, and afterwards extended for a period of three months. Subsequently Pomeroy enterd into a bond and lease contract with one Lewis, by which he (Pomeroy) agreed that Lewis could mine, ship, and sell ore from these claims. This bond and lease contract was assigned to the plaintiff in error through several mesne assignments.

It is urged that Warnock acquiesced or agreed to this assignment to plaintiff in error, and is estopped to claim that the company, without authority, removed and converted the ore to its use. The evidence in the case fails to make out a case of estoppel, and the contracts, above mentioned, which are set out as exhibits in the answer, show conclusively that Pomeroy had no right to give Lewis or his assigns authority to mine and sell ore. On the contrary, Pomeroy's right, and the only one he could assign, was the right or option to purchase within the time set out in his contract and to mine ore for the purpose of doing the assessment work. Plaintiff in error was clearly a willful and intentional trespasser, and the measure of damages was the net value of the ore taken from the premises, and he was not entitled to deduct therefrom the expenses of mining, freight, and smelter charges.

"The measure of damages for the reckless, willful, or intentional taking of ore or timber from the land of another without right is the enhanced value of the ore or timber when it is finally converted to the use of the trespasser, without allowance to him for the labor bestowed or expense incurred in removing and preparing it for market." Silver King Coalition Mines Co. v. Silver King Consolidated Mining Co., 204 Fed. 166 at page 178, 122 C. C. A. 402 at page 414, citing Wooden-Ware Co. v. U. S. 106 U. S. 434, 1 Sup. Ct. 398, 27 L. Ed 230.

Finding no reversible error in the record, the case is affirmed; and it is so ordered.

PARKER, C. J., and ROBERTS, J., concur.

## ON REHEARING

RAYNOLDS, J. The plaintiff in error asks for a rehearing on various grounds; the only one not covered in the general opinion being that a judgment for exemplary damages awarded in this case is not sustained by the allegations in the complaint, and that nowhere was it alleged and proved, nor did the trial court find, that the plaintiff in error committed a willful trespass, or was guilty of any bad faith in the premises. The answer to this contention is that the point was not raised below, nor in any manner called to the attention of the trial court.

Findings of fact were expressly waived by both sides, and it is impossible for this court to determine on what particular ground the trial judge allowed the damages in the amount prayed for. The damages asked were not designated in the complaint by any name, but a specified sum was demanded. The court below, by allowing this sum and refusing to permit plaintiff in error to introduce evidence in support of his theory of the case, evidently took the view that the plaintiff in error was a willful and intentional trespasser, and that the rule of damages as to such a trespasser applied to the case. In this finding the lower court was justified, there being substantial evidence to support it. Plaintiff in error, in the motion for rehearing, contends, however, that there are no allegations in the complaint in support of which evidence of such exemplary damages could be offered. This is probably true; the complaint, as amended at the trial, alleging ''that on or about the month of February, 1917, the defendant entered upon said mining claims and without authority from plaintiff removed from the same, and converted to their own use, several thousand pounds of copper, of the value of $8,000, to the plaintiff's damage in the sum of $3,795.55.'' If the introduction of the evidence tended to prove a willful trespass and the damages sought were based upon the assumption, and if, further, the complaint contained

no proper allegation of willful trepass, upon which such evidence could properly be introduced, it behooved the plaintiff in error to object at the time it was offered, and point out to the court the reason why such evidence was not admissible. He did not do this. He allowed it to be introduced, and then offered evidence on his theory of the case, which was apparently that of an innocent trespass, attempting thereby to reduce the amount of damages proved by the defendant in error.

[4] The objection that the complaint did not contain a proper allegation on which evidence of exemplary damages could be introduced was not called to the attention of the lower court by objection, nor by motion to set aside the judgment, nor was it assigned as error in this court, but was put forward as an argument for reversal in the brief for the first time. It is unnecessary to cite authority for the proposition that appellant must call the trial court's attention to the alleged error and object to the introduction of evidence he considered inadmissible at the time it is offered, or he is deemed to have waived the objection. Here no objection was made, and the case was evidently tried on the theory and belief that the plaintiff's complaint contained sufficient allegations to support such proof of damages; the defendant contending himself by offering and proving a measure of damages consistent with his theory that he was an innocent trespasser and liable only for such damages as would flow from such innocent trespass. At no time was the objection made that the allegations in the complaint were insufficient to support damages for wilful trespass. Both sides having tried the case upon this theory, and findings of fact having been waived, we are compelled to affirm the judgment, as we find it supported by substantial evidence, and no objection having been made to the introduction of evidence, nor to the sufficiency or insufficiency of the allegations in the pleadings.

The motion for rehearing is therefore denied; and it is so ordered.

PARKER, C. J., and ROBERTS, J., concur.