253 P.2d 585

## BREITHAUPT v. STATE.

No. 5611.

Supreme Court of New Mexico.

Feb. 12, 1953.

---

Justin T. Reid, Santa Fe, for plaintiff in error.

W. F. Kitts, Asst. Atty. Gen., for defendant in error.

McGHEE, Justice.

On April 5, 1951, the petitioner was sentenced to serve a term of not less than six years nor more than ten years in the penitentiary following his conviction in the District Court of Eddy County on a charge of involuntary manslaughter. He filed an application for a delayed appeal in the district court where he was convicted on October 17, 1952, and on the day following the application was denied as having been made too late.

Under our Rules 5 and 6, secs. 19–201(5) and 19–201(6), 1941 Compilation, appeals must be taken or a writ of error sued out within three months from the entry of final judgment.

The petitioner excuses his failure to appeal within the time provided by stating he was not advised of his right to appeal within the time allowed, or that an appeal might be taken (as he says) without the usual expense where a defendant was without funds; that during the appeal period he was caused by the officials, guards and inmates of the penitentiary to believe, and he did believe, that prisoners were not allowed to see or contact attorneys, and that appeal papers, applications for writs of habeas corpus, or other papers, could not be filed in any courts directly by any prisoner. Other matters are stated but will not be here repeated as a formal hearing was held by the Court at which appeared the petitioner, the prison Warden, Morris Abram, and inmate Timmons, who well deserves the title of "penitentiary lawyer." As a result of the hearing we summarize our findings of material facts as follows:

Within a few days after the prisoner entered the prison, the then Assistant Warden, Morris Abram, fully informed him of the rules of the penitentiary, and, among other things, stated that he was free to write to the lawyer who defended him, the judge who presided at the trial and the sheriff of the county in which he was tried concerning any matter connected with his case. Within thirty days after his incarceration the petitioner was advised by inmate Timmons (above referred to as the penitentiary lawyer) that he still had time in which to appeal and that he had good grounds for an appeal or discharge on a writ of habeas corpus. Within such thirty

day period the petitioner asked Abrams to allow him to look through the telephone directory to get the name of an attorney to whom he could write, as he desired to file a civil action for money owed to him by some persons, and was advised he could not maintain a suit while in prison, and such permission was denied. He did not thereafter ask permission to contact a lawyer or mail out appeal papers. Inmate Timmons prepared a petition for a writ of habeas corpus for the petitioner who attempted to have it carried out of prison by a visitor who reported such action to the prison authorities and the petition was confiscated.

It had been the rule of the prison for a considerable time that inmates could not mail out legal papers or petitions for writs of habeas corpus directly to a court clerk or judge, or write to any attorney except the one who defended him in the trial court. This rule was abolished in the early part of June, 1951, following a visit to the prison by the then United States Attorney, and immediately public notice was given over the prison loud speaker to the inmates of the revocation of the rule and that they were at liberty to mail out such papers. The change in the rule was known to all inmates.

On April 16, 1951, the petitioner wrote to James F. Warden of Carlsbad, New Mexico, a competent and experienced attorney who had defended him in the trial court, the following letter.

"April 16, 1951

"James Warden, Attorney,
"Carlsbad, New Mexico
"Dear Jim:

"We got hit pretty hard. Too bad. I am beginning to wonder if there was not some colusion connected with the outcome. Just a thot.

"Now Jim, please do not get the wrong impression, I am not going to become a jailhouse lawer. The entire procedure was so fast, smooth, well oiled, and so completely confusing to me, and I may add, slightly disappointing.

"I have had an interview with the doctor here and he made the statement to me that there is a possibility I may have suffered brain concussion and still may be. That would account for my lack of equiblibrum, severe headaches, lack of mental alertness, hazy memorie concerning names, addresses, events that happened in the past. The doctor has sent to Dr. Womack for X-rays and complete details on my physical condition. I have applied to the V. A. for admittance to a V. A. hospital. The V. A. man told me that if I were admitted for treatment, that the V. A. would also fix my glasses.

"They have a rule here that no one can have his glasses fixed until after 60 days unless the patient will stand the expense. Well, I am broke. Hint!

"Jim, I have been informed that if the judge who sentenced me so desires, he could give me credit for the 90 days I was a prisoner of the county, however this must be done within 30 days after sentence was passed. Please do what you can.

"Incidentally, Coffee owes me $2.00. Also 'Alabama', another prisoner there, has a pair of glasses of mine—the frames are broken but the lenses are O.K. and I could use them in this pair of frames I have with me.

"Well, Jim, I am happy here. If, by any stretch of the imagination you can imagine a man happy with a conviction of 1 to 6 years hung on to him. The food is good and ample. The treatment is decent. The institution is run with a good degree of efficiency. There are some strict rules but with 700 or 800 men, they are necessary. We get some exercise and sunshine every day. There is a good library here which I am taking advantage of. I have started a review of Latin, Geom, plain & solid, and Trig., also physics, and I am going to study electrical eng. & plumbing, so if I cover half the ground I have started I will have gained considerable when I am free.

"Jim, some day when I get enough money I intend to reopen my case and beat it so if there are any steps that should be taken at present without involving expense please do so.

"My best to you and Mrs. Warden,
"Sincerely,
"(sgd.) Paul H. Breithaupt."

This letter clearly refutes any claim of oppression on the part of the prison authorities up to that time. Warden did not answer the letter.

Since December, 1951, the petitioner has filed petitions for writs of habeas corpus in the District Court of Santa Fe County, this Court and the United States District Court of New Mexico, but has been unsuccessful in securing his release.

It is true that from the time of his incarceration to the time of the revocation of the rule above mentioned, the petitioner could not have mailed out a direct appeal, but he was at liberty to have his attorney Warden take an appeal, and we have no doubt such an appeal would have been taken on receipt of the letter of April 16, 1951, had he not told such attorney no expense was to be incurred. We quote from the letter:

"Jim, some day when I get enough money I intend to reopen my case and beat it so if there are any steps that should be taken at present without involving expense please do so."

New Mexico has no provision for paying the expenses of appeal for an indigent defendant, as do many other states. The only error claimed is in connection with the admission of testimony showing the result of a blood test, and this could not be reviewed without a transcript of at least the testimony relating to the admission of such evidence. It could not be obtained except by paying the court reporter his fees.

A practice has grown up of allowing free transcripts for indigent defendants convicted of murder in the first degree, but this is a humanitarian act on the part of the trial judge who orders the reporter paid out of the court fund, to the end such a defendant may have a review here of his conviction.

■ We have held in State ex rel. Sandoval v. Taylor, 1939, 43 N.M. 170, 87 P.2d 681, and State v. Arnold, 1947, 51 N.M. 311, 183 P.2d 845, that the time allowed by statute for appeals is mandatory, and timely filing is jurisdictional to this court. We held in Eigner v. Geake, 1948, 52 N.M. 98, 192 P.2d 310, that, absent exceptional circumstances, the time for application for a writ of certiorari would be the same as for an appeal or writ of error.

■ Notwithstanding these decisions and our lack of a rule or statute providing for a delayed appeal or writ of error, if the petitioner had been deprived of his right to appeal or sue out a writ of error within the time limited, by the penitentiary authorities, we would bow to the mandate of the United States Supreme Court in Dowd, Warden v. United States ex rel. Cook, 1951, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215, 19 A.L.R.2d 784, grant the writ of error, review the claimed error on its merits and thus prevent the usurpation of our appellate functions in criminal cases by the federal courts in habeas corpus proceedings.

We are not dealing with an illiterate prisoner, but with a graduate in structural engineering of the University of Arizona, after a four-year course, who instead of seeking an immediate appeal was determined at the date of his letter to make the best of the situation, materially increase his education and avoid financial obligations. A careful consideration of the evidence convinces us the prison authorities did not prevent the petitioner from taking an appeal, or frustrate him in any efforts to take one within the time provided by the rules.

The petition will be denied. It is so ordered.

COMPTON, COORS and LUJAN, JJ.. concur.

SADLER, Chief Justice (concurring in part and dissenting in part).

The opinion written by Mr. Justice McGhee for the court correctly determines the question submitted and invokes my concurrence. My disapproval relates only to so much of it as predicts what we would do if a supposed state of facts were presented. The opportunity for error is multiplied in exact proportion to the number of times we volunteer our views on supposed facts. Possibly, when confronted with grounds in the facts for a delayed appeal, my views will accord with those expressed by the majority today. Nevertheless, I should like to feel free to hold otherwise if they do not. I think decision of the question should abide the day when we must decide it. It is unnecessary to do so now.