328 P.2d 389

**Harold E. SCOFIELD, Plaintiff-Appellee,**

**v.**

**J. W. JONES CONSTRUCTION COMPANY (N.S.L.), a corporation, Defendant-Appellant.**

**No. 6365.**

Supreme Court of New Mexico.

July 28, 1958.

Sherman & Hughes, Deming, for appellant.

Garland, Sanders & Martin, Las Cruces, for appellee.

McGHEE, Justice.

The plaintiff-appellee obtained a verdict for $30,000 on account of personal injuries and property damage as the result of an intersection collision between a car he was driving and a truck belonging to the defendant-appellant. Later a remittitur of $10,000 was filed after the trial court announced he would grant a new trial unless such action was taken by the appellee, leaving a net judgment in the sum of $20,000.

Numerous errors are assigned by the appellant in its efforts to secure a reversal, but we are met at the outset of our consideration by the claim of the appellee that we are without jurisdiction to entertain them for the reason the appeal was not taken within thirty days from the entry of the judgment as provided by Supreme Court Rule 5, § 1, as amended, effective January 1, 1955. § 21–2–1(5), 1953 N.M. S.A., as amended. The rule reads:

"Within thirty [30] days from the entry of any final judgment in any civil action, any party aggrieved may appeal therefrom to the Supreme Court."

The record discloses the following as to the various steps taken in the case, all in the year of 1957:

| | | |
|---|---|---|
| March 23 | Jury verdict for plaintiff in the sum of $30,000. | |
| April 1 | Motion filed for judgment non obstante veredicto. | |
| April 25 | Judgment in accordance with verdict. | |
| April 26 | Order entered overruling motion for judgment non obstante veredicto. | |
| May 3 | Motion for new trial filed. | |
| August 22 | Motion for new trial granted unless plaintiff filed remittitur for $10,000. | |
| August 27 | Remittitur filed by plaintiff. | |
| August 27 | Order entered denying motion for a new trial. | |
| August 30 | Motion for appeal filed and order entered granting it. | |

It will be noticed that the motion for judgment non obstante veredicto was filed nine days after the return of the verdict, and denied twenty five days thereafter, but one day subsequent to the filing of the judgment, and that the motion for a new trial was filed eight days subsequent to the entry of the judgment. No action, however, was taken on the motion for a new trial until August 22 when it was determined a new trial would be granted unless a remittitur was filed, and the order deny-

ing the motion was entered on August 27, with the appeal being allowed three days later.

The crucial question is: Does the filing of a motion for a new trial and the time which elapses until an order is entered thereon toll the time for taking an appeal? If the time is thus tolled then the appeal was timely taken; if not then the appeal must be dismissed under our holding in Breithaupt v. State, 1953, 57 N.M. 46, 253 P.2d 585, that we are without jurisdiction to entertain an appeal which is not timely taken.

The question first arose in this court in Pearce v. Strickler, 1897, 9 N.M. 46, 49 P. 727, 728, where judgment on the verdict of a jury was entered on February 6, 1896, immediately following the return of the verdict, in accordance with then existing rules where a party had not given notice of intention to file a motion for a new trial. A motion for a new trial was seasonably filed, and on February 15, 1896, hearing on the motion was continued for thirty days, which carried the motion over from a special term into the regular March term. The motion was denied on March 27, 1896. It was stated the period of limitation ran from the day of final judgment to the time the writ of error was lodged in the court below. The court stated:

"When the motion is filed in proper time, the proceeding is in fieri until the motion is denied; and until then the judgment must be considered as in paper, or as suspended as a roll, in the common-law sense, by the motion."

This holding was followed in Sacramento Valley Irrigation Co. v. Lee, 1910, 15 N.M. 567, 113 P. 834; Dye v. Meece, 1911, 16 N.M. 191, 113 P. 839, and finally with apparent reluctance in Romero v. McIntosh, 1914, 19 N.M. 612, 145 P. 254.

In the latter case it was stated that where the motion for a new trial or rehearing was seasonably made the time was to be computed from the date of the denial of the motion and not from the date of the rendition or entry of the judgment or decree where the motion was necessary to the consideration in the appellate court of the question involved.

We then had King v. McElroy, 1933, 37 N.M. 238, 21 P.2d 80, 84, a non jury case, where it clearly appears the former holdings on the point were in fact overruled where the motion is denied and there is no material change in the judgment. The court was there dealing with what was then § 105–801, Comp.St.1929, now § 21–9–1, 1953 N.M.S.A. The losing party had moved the judgment be set aside and that another be entered in his favor which motion was not ruled upon for more than thirty days after it had been filed, and it was more than six months after the filing of the judgment before a writ of error was sued out here. The court then on mo-

tion of the losing party had entered an order striking a recitation in the judgment that an appeal had been asked for and allowed. This court said there had been no real change in the judgment, saying:

"We hold that the motion directed against the judgment entered September 25, 1931, which motion was filed September 10, 1931, even if becoming effective only upon the date of subsequent entry of the judgment, was on October 26, 1931, through failure of the court to rule thereon prior thereto, in legal effect denied, and the motion should thereafter have been treated as denied by the court, and all parties to the suit. We further hold that section 105–801, Comp.St.1929, and the proceedings thereunder respecting motions directed against the judgment and which result in a denial of the motion do not have the effect of suspending the operation of the judgment after the date of its entry, so far as the running of the six months from entry of final judgment limited for appeal or writ of error is concerned. In such case, the assault upon the judgment, final when entered being unsuccessful, the character of the judgment remains unaffected."

But here the appellant secured in fact a substantial reduction in the amount of the judgment when the appellee filed a remittitur of $10,000 in order to avoid having a new trial granted, so we must say whether this fact tolled the time or started it running again for appeal purposes from the date of the order denying the motion for the new trial sought by appellant.

Since the cases set out above were filed this court adopted our Rules of Civil Procedure which were modeled on the Federal Rules of Civil Procedure, 28 U.S.C.A. Their rule 73(a) relating to the time for taking an appeal from a judgment is the same as ours except we did not adopt the provision that a judgment shall be suspended during the time the trial court is considering a motion attacking a judgment, so that under that rule the time for appeal begins to run from the date of the entry of the ruling on motions directed against the judgment.

We did not adopt the federal rules in toto, but only such as the Rules Committee and this Court thought advisable, and we are strongly persuaded by the argument that considerable weight should be given to our refusal to provide the time for appeals would be tolled during the time the motions were pending. King v. McElroy had been in the reports for many years when we adopted our present rules, and it must have been thought that an unsuccessful movant against a judgment should not be given the benefit of the time which would elapse between the filing of his motion and a ruling thereon in computing the time he had in which to take an appeal.

324

■ We believe it is implicit in the King case that a movant who obtains a substantial modification of the judgment against him, as appellant did in this case, is entitled to have the time for taking his appeal tolled during the pendency of the motion.

Section 21–9–1, 1953 N.M.S.A., covers non jury cases only, so the motion in this case was not denied by operation of law thirty days after it was filed.

■ We hold the appeal was in time and the case is properly here for review on its merits.

The first point relied upon for a reversal is the denial of a motion for change of venue made after the jurors had been sworn to try the case.

■ The appellant had been doing paving work for the Village of Lordsburg and it was claimed dissatisfaction with such work on the part of the inhabitants caused them to be prejudiced against the appellant. The Judge who heard the voir dire examination of the members of the jury panel denied the motion. The appellant did not ask the trial court to make findings of fact and conclusions of law on the record so there is nothing upon which to base an appellate review of the question. State v. Fernandez, 56 N.M. 689, 248 P.2d 679. Coupled with the motion for a change of venue was one for a mistrial but we know of nothing warranting the latter when the

motion for a change of venue was not sustained.

■ Nor was the appellant's position helped by his motion for a new trial where he submitted an affidavit of one of the jurors as to what went on in the jury room in an effort to show prejudice against the appellant, and that the jurors considered matters not before them in the court room. It is no longer open to question in this state that a juror may not impeach his verdict by affidavit or testimony after verdict. McKinney v. Smith, 1958, 63 N.M. 477, 322 P.2d 110.

The next point made by the appellant is that the trial court erred in allowing an investigating officer to testify as to which vehicle first entered the intersection where the collision occurred. The record discloses the following objection, statements and ruling:

"* * * Mr. Garland: Q. Now, Mr. Martin, from your investigation did you, or could you determine which one of the two vehicles entered the intersection first? A. According to my investigation, I believe—

"Mr. Sherman: If the Court please, just a minute. I am going to object to that question. I don't believe that, the witness was not there when it occurred, and it would be—any opinion which he would give would be based necessarily upon any information

which he received, which would be hearsay—on the speed of the vehicle and different things like that, and I don't believe that the witness could conscientiously say, based from any investigation which he made. It would necessarily have to be based on hearsay statement.

"Mr. Garland: No, if the Court please, we are not asking the witness to repeat hearsay. We are asking him merely if his investigation disclosed. We are not asking him to repeat what somebody told him.

"The Court: You are asking him to draw a conclusion from his investigation?

"Mr. Garland: That's what I am asking him, from the facts—the physical facts as he found them—if he could determine which vehicle in fact entered the intersection first.

"The Court: That is on the physical facts?

"Mr. Garland: Yes, sir.

"The Court: I think that would be good. He can answer that.

"Q. (Mr. Garland continuing). Can you answer that, Mr. Martin? A. Through my investigation, and in my opinion, as a result of the investigation, I believe Mr. Scofield entered the intersection first."

On cross examination it was finally developed by one question and answer the testimony as to who first entered the intersection was based on what the appellee said as to his speed, and the fact the appellee's car was 31 feet in the intersection and the truck about 27 feet at the time of the collision. No motion was made to strike so much of the answer of the witness made immediately following the objection and ruling, as might have been based on what the appellee said as to his speed.

■ The appellant now urges different reasons why the evidence should have been excluded in that it is based on conclusions, and that he was usurping the province of the jury as that was solely a matter for its determination. These additional objections come too late. A litigant may not stand on one ground of objection in the trial court and urge another here. Alvarado Mining & Mill. Co. v. Warnock, 1919, 25 N.M. 694, 187 P. 542. See also Tietjen v. McCoy, 1918, 24 N.M. 94, 172 P. 1042 and Sena v. Sanders, 1950, 54 N.M. 83, 214 P.2d 226.

We would not be justified in reversing the case on this point on the record as made.

■ Nor are we able to agree with the appellant's contention that the appellee was guilty of contributory negligence as a matter of law. The jurors heard the testimony as to which vehicle first entered the intersection and had the right of way, as well as to the speed each was traveling and the

other physical facts. Whether the appellee was guilty of contributory negligence which was a proximate contributing cause of the collision was a matter for the jury as we have so often held. McMinn v. Thompson, 1956, 61 N.M. 387, 301 P.2d 326.

As the jury found against the appellant on this question after hearing all of the testimony and being fully and fairly instructed, we do not feel we would be justified in overturning the verdict on this point.

█ The appellant next claims the trial court erred in giving its instruction No. 21 reading as follows:

"21. I further instruct you, if you find from the evidence that the plaintiff had entered the intersection of Main Street and Sixth Street prior to the entry thereof by the defendant's vehicle, and if you find that plaintiff was driving his automobile on the right hand side of the highway and in a reasonable and prudent manner, that the plaintiff, in so driving such was in a favored position and it was the duty of the defendant driver to yield the right-of-way to the plaintiff's vehicle, and if you find that he failed to yield the right-of-way, the defendant would be guilty of negligence per se, as herein defined."

The ground of the objection is that there was no competent testimony upon which

to base it and that a false issue was thereby injected into the case, but with this contention we cannot agree. In addition to what is set out above the testimony of the appellee himself calls for such an instruction.

The appellant also claims error because of the giving of an instruction on sudden emergency, saying again a false issue was thereby introduced into the case.

The appellee testified that when he saw the truck out of the corner of his eye and realized there would likely be a collision he swerved his car to one side in an attempt to avoid the truck but was unable to get out of its way.

It was the appellant who introduced that question into the case by its requested instruction No. 13 which was given as the court's instruction No. 28. As will be seen a part of the instruction relates to the duty imposed upon the appellee to swerve his car if by doing so he could avoid a collision, even though he had the right of way and the appellant was negligent. The instruction reads:

"28. You are further instructed that even if Mr. Scofield had the right-of-way and even if Mr. Jones was negligent in the operation of his truck, it was still the duty of Mr. Scofield to exercise reasonable care to avoid a collision. Because one driver is careless or violates the law does not justify another driver in being careless or in

permitting a collision, if by the exercise of ordinary care he can prevent it. So you will also consider the opportunity Mr. Scofield had to observe the approach of the Jones truck, and further, the opportunity to slacken his speed, stop his car, or swerve so as to prevent a collision. Possession of the right-of-way does not justify the possessor in plunging ahead, careless of consequences, nor does it excuse him from a failure to exercise ordinary care in avoiding injuries to others or to himself. If Mr. Scofield, by the exercise of an ordinary degree of care, should have discovered that there was danger of a collision, at a time when he could have taken steps to avoid it, it was his duty to do so even though he might have had the right-of-way at the time, and the failure of this duty would constitute negligence on his part."

■ With instruction No. 28 being given to the jury we think it was no more than fair that the instruction on sudden emergency should be given. Absent such action the jurors may well have thought he swerved the wrong way and was therefore guilty of contributory negligence, even though he was acting in a sudden emergency.

Finally, the appellant claims damages of $20,000 are grossly excessive for the injuries sustained by the appellee whose knee cap on his left leg was broken in three places, necessitating surgery and twelve days confinement in a hospital and was then on crutches for some three weeks. In addition he had therapy treatments in El Paso for a time, and for several months in Silver City at intervals of approximately three days. He also had a numbness in the front part of his foot extending to the knee to the extent that even at the time of trial he felt no pain whatever when a pen was pushed into his left leg. In addition, he has a ten per cent permanent disability in his leg from the knee injury as stated by the orthopedic surgeons, and is unable to walk fast or indulge in exercise such as playing golf of which he was very fond. He also suffered a great deal from pain, following the injury and while taking the physical therapy treatments.

[9] Twenty thousand dollars sounds like a lot of money in this case, but as is so often said no monetary standard can be set for pain and suffering, and in addition the plaintiff must go through life crippled to some extent and handicapped in his daily life and activities. Also there is the factor of steadily mounting inflation with no apparent end in sight.

■ The trial judge heard all of the evidence, observed the appellee and found the verdict was not the result of passion or prejudice, and left him with a verdict for $20,000. He was in much better position than this court to pass upon the ques-

328

tion. Henderson v. Dreyfus, 1919, 26 N.M. 541, 191 P. 442. We will not overturn him in the exercise of his discretion as to damages finally allowed.

The judgment will be affirmed and it is so ordered.

LUJAN, C. J., and SADLER and COMPTON, JJ., concur.

SHILLINGLAW, J., dissents.

SHILLINGLAW, Justice, dissenting.

I am unable to agree with the opinion of Justice McGHEE.

First, as to the disposition of the motion to dismiss the appeal, the opinion states the question to be:

"Does the filing of a motion for a new trial and the time which elapses until an order is entered thereon toll the time for taking an appeal?"

The majority opinion, finding that the judgment was entered on April 25, 1957, that the motion for a new trial was filed May 3, 1957, and that the appellants had then consumed 8 days of the 30-day period in which to appeal, held that the appellants had 22 days in which to file an appeal after the motion for a new trial was denied on August 27, 1957. The appeal being filed on August 30, 1957, the appellants still had 19 days remaining at the time of the filing and, consequently, the appeal was held timely.

I agree that the appeal was timely, but how did the majority arrive at this conclusion? They hold it was timely because the movant obtained substantial relief from the judgment in the form of a remittitur. From the reasoning of the majority, I must conclude that had there been no remittitur, the appeal would not have been timely. How is a movant to know what disposition is to be made of his motion? Is the right of appeal to depend upon what action the trial judge may take on the motion for a new trial? It is apparent that, with our 30-day limitation period for appeals, such will often be the case. I cannot acquiesce in the result that will follow from such a ruling.

It is noted that the appellant still appeals from the excessiveness of the verdict.

Secondly as to the disposition of the merits of the case.

The following exchange took place during the examination of Officer Martin, who was not an eyewitness to the accident:

"Q. Now, Mr. Martin, from your investigation, did you, or could you determine which one of the two vehicles entered the intersection first? A. According to my investigation, I believe—

"Mr. Sherman: If the Court please, just a minute. I am going to object to that question. I don't believe that, the witness was not there when it oc-

curred, and it would be—any opinion which he would give would be based necessarily upon any information which he received, which would be hearsay—on the speed of the vehicle and different things like that, and I don't believe that the witness could conscientiously say, based from any investigation which he made. It would necessarily have to be based on hearsay statement.

"Mr. Garland: No, if the Court please, we are not asking the witness to repeat hearsay. We are asking him merely if his investigation disclosed. We are not asking him to repeat what somebody told him.

"The Court: You are asking him to draw a conclusion from his investigation?

"Mr. Garland: That's what I am asking him, from the facts—the physical facts as he found them—if he could determine which vehicle in fact entered the intersection first.

"The Court: That is on the physical facts?

"Mr. Garland: Yes, sir.

"The Court: I think that would be good. He can answer that.

"Q. (Mr. Garland continuing.) Can you answer that, Mr. Martin? A. Through my investigation, and in my opinion, as a result of the investigation, I believe Mr. Scofield entered the intersection first."

There is no conceivable way that such a determination could have been made without taking into consideration the speed of the vehicle. Such testimony was, in my opinion, highly prejudicial and constituted reversible error. That the testimony was based on hearsay was admitted on cross examination:

"Q. * * * So your assumption was based on the fact that *he told you* he was going twenty-five miles per hour and the fact that he was thirty-one feet in the intersection, well, when the truck was about twenty-seven feet, is that correct? A. That is correct." (Emphasis mine.)

The opinion comments that the defense counsel did not move to strike "so much of the answer of the witness made immediately following the objection and ruling, as might have been based on what the appellee said as to his speed." Obviously not; the precise point which counsel was trying to establish was that the opinion of the witness Martin was based on hearsay.

I note the following statement on page 11 of appellant's brief in chief:

"Thus showing that the basis for his statement was at least partially from hearsay, as our objection pointed

out. It would have been just as correct to allow the officer to testify as to the speed of the vehicles prior to impact."

Appellant then cites Stuart v. Dotts, 89 Cal.App.2d 683, 201 P.2d 820, 822:

"Opinion evidence may be given from personal observation on subjects such as whether a party is intoxicated but not on facts related by other parties."

From this, I would not say that appellant completely abandoned his "hearsay objection."

For the above reasons, I would reverse the judgment of the court below. Accordingly I dissent.