364 P.2d 757

William A. STURGEON, Plaintiff-Appellee,

v.

L. B. CLARK, d/b/a L. B. Clark Company, Defendant-Appellant.

No. 6810.

Supreme Court of New Mexico.

Aug. 23, 1961.

R. D. Mann, Atwood & Malone, Roswell, for appellant.

Schauer & Stiff, Roswell, for appellee.

MOISE, Justice.

Defendant appeals from a judgment in the amount of $51,100 entered on a jury verdict in a case arising out of a collision between a station wagon being driven by plaintiff and a pickup truck being driven by defendant. In the accident plaintiff was injured and the station wagon being driven by him was damaged.

Defendant's first point is based upon the trial court's permitting plaintiff to testify concerning a doctor's findings as to plaintiff's condition prior to the accident on the ground it was hearsay. The testimony and objection as shown by the record are quoted as follows:

"Q. Were you given a complete physical examination by Dr. Steve Marshall? A. Yes, sir.

"Q. What was the result of that examination?

"Mr. Mann:—We object as to the result of the examination because Dr. Marshall can testify to that.

"Mr. Stiff:—Dr. Marshall is in the Pacific right now.

"The Court:—Overruled.

"A. Please repeat your question.

"Q. What was the result of that examination? A. He gave me a complete examination and I passed everything fine on it and his final phase of it was he wrote 'Fine physical specimen.'

"Q. Did this examination include an examination of your back? A. It included an examination of everything."

Plaintiff in his brief anticipates defendant's argument to the effect that even if the question was objectionable as calling for hearsay evidence, the ruling by the court will be sustained because the objection was not properly stated and the court's attention not directed to the defect relied upon. That such is the rule cannot be doubted. Alvarado Min. & Mill Co. v. Warnock, 25 N.M. 694, 187 P. 542; Whitley v. State, 36 N.M. 248, 13 P.2d 423.

Defendant would avoid the consequences of his failure to object that the question called for hearsay testimony by arguing that there could not have been any failure to understand the basis of his objection and accordingly attention of the court had been directed to the error. With this we cannot agree. The import of the objection was merely to the effect that Dr. Marshall could testify on the subject and upon being advised that he was not available, no further complaint was voiced and the objection was overruled. To now say that the objection was intended to call attention to the hearsay nature of the answer that was being called for, and that the court so understood it, would certainly be reading into the objection something not implicit therein and under the rule of the cases cited supra this will not be done. See also Scofield v. J. W. Jones Construction Company (N.S.L.) a corporation, 64 N.M. 319, 328 P.2d 389, where new reasons were advanced on appeal to those stated at the trial. The situations there and here are comparable. McCord v. Ashbaugh, 67 N.M. 61, 352 P.2d 641, relied on by defendant, does not support his position.

Defendant's second point arises because of Instruction No. 10 given by the court. The instruction reads as follows:

"You are instructed that at the time of the collision in question, the laws of the State of New Mexico provided in part as follows:

"(64–18–18) 'Whenever any highway has been divided into two roadways by leaving an intervening space or by a physical barrier or clearly indicated dividing sections so constructed as to impede vehicular traffic, every vehicle shall be driven only upon the right-hand roadway.'

"Therefore, if you find that the highway where defendant was driving his motor vehicle just prior to the time the collision in question occurred had been

divided into two roadways by leaving an intervening space or by physical barrier or clearly indicated dividing sections so constructed as to impede vehicular traffic, and if you further find that the defendant prior to the time said collision occurred had been driving his vehicle on some part of the highway other than the right-hand roadway then you are instructed that the defendant was guilty of negligence as a matter of law."

The objection thereto as shown by the record was as follows:

"The Defendant further accepts to the giving of the Court's instruction No. 10 dealing with Section 64–18–18 of the New Mexico Statutes concerning divided highways, and as ground for the exception states that the vehicle driven by the Defendant Clark which was on the South side of the medium was a vehicle exempt from the ordinary rule of driving on the right side of the road, such exemption existing by statutory law, and further that said Instruction is not sustained by the evidence and is so worded as to place undue emphasis covering conduct of the Defendant under the circumstances."

The first part of the objection and the argument of defendant in connection therewith is directed at the fact that the court in its instruction failed to take into ac-count the exemption from the operation of § 64–18–18, N.M.S.A.1953, contained in § 64–15–4(b), N.M.S.A.1953. This latter sec tion reads as follows:

"Unless specifically made applicable, the provisions of this act shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

The accident in the instant case occurred about 45 feet west of the end of a divider some 385 feet long constructed between the north and south lanes of the highway. Defendant was the contractor on the project and had driven his pickup truck into the eastbound (south) lane. He was headed west and his car had been parked at the east end of the divider and as close to it as possible while he got out to look at some rip rap work that was being done by a subcontractor off the highway but adjacent to it, or to talk to the subcontractor. The rip rap work was a part of the overall project. Upon completing his mission at this point defendant got in his truck and drove along the south side of the divider toward the west. It was about 4:30 p. m. and he was on his way to the west end of the project to see that the warning lights were properly set. Just after passing the west end of the divider, defendant collided with

the car of plaintiff who was proceeding toward the east on the outside edge of the pavement in the eastbound lane.

Do these facts disclose a situation for the application of the exemptions of § 64-15-4(b), N.M.S.A.1953? Was defendant a person and his pickup truck a motor vehicle "actually engaged in work upon the surface of the highway" so as to be exempted from the provisions of the statute governing the operation of motor vehicles on the highway? We think not.

The section of the statute creating the exemption should be strictly construed, Groves v. Meyers, 35 Wash.2d 403, 213 P.2d 483, and the right of the defendant to the benefits of the exemption must be clear and unmistakable. State ex rel. Wilson v. Board of County Commissioners of the County of Quay, 62 N.M. 137, 306 P.2d 259. We fail to see how it can be very seriously contended that when defendant was in the process of driving several miles down the road to the end of the project he was "actually engaged in work upon the surface of the highway." The situation is not altered by the fact that he had just departed from a place where he had stopped his car on the surface of the highway while he inspected the rip-rapping operation, or discussed the progress of that work with the subcontractor.

We are clear that the legislature incorporated § 64-15-4(b), N.M.S.A.1953, into the statute in recognition of the fact that in constructing, repairing and maintaining highways there are circumstances under which men and equipment must be present on the surface of the highway without being held to comply with the rules of the road generally binding. However, while providing for performing necessary work without being in violation of statutes otherwise applicable, they were careful to restrict the exemption to situations where actual work was being performed on the surface. It is not for us to extend the application beyond the clear language used. Compare Tiedebohl v. Springer, 55 N.M. 295, 232 P.2d 694.

Defendant relies on a number of cases from other jurisdictions, all of which we find easily distinguishable by virtue of the fact that they involved actual work on the surface of the highway. We make mention of only one. Johnson v. Bergquist, 184 Minn. 576, 239 N.W. 772, is a case where the equipment was standing on the highway with its motor running while the workmen were adjusting the grader blade preparatory to using it on the surface of the highway, when the accident occurred. The court held that under the facts, this constituted work on the surface so as to bring the case within an exemption like that in § 64-15-4(b), N.M.S.A.1953. This case is as easily distinguished under its facts from the case sub judice as the others cited by defendant.

**138**

It follows that the first portion of defendant's objection to instruction No. 10 was not well founded.

■ The argument on the second part of defendant's attack on instruction No. 10 proceeds on the basis that the instruction omitted any requirement that negligence there described had to proximately contribute to plaintiff's injury. There can be no argument that in order to be liable to plaintiff the defendant must not only have been negligent, but the negligence must have been the proximate cause of the injuries suffered. Terry v. Bisswell, 64 N.M. 153, 326 P.2d 89; Hartford Fire Insurance Company v. Horne, 65 N.M. 440, 338 P.2d 1067. Even so, it does not follow that a reversal is required. This is true for a number of reasons.

The court gave the jury instruction No. 2 which stated, among other things, "If you find that the defendant was not negligent, or that *his negligence, if any, was not a proximate cause of the collision*, then the plaintiff could not recover against the defendant under his Complaint and your verdict should then be in favor of the defendant." (Emphasis supplied).

Again, in instruction No. 3, the jury were told that, "On the Complaint, the burden is upon the plaintiff to prove that the defendant was negligent, and that his negligence was a proximate cause of the collision complained of." A reading of instruction No.

10 discloses it is nothing more nor less than advice that violation of the statute constituted negligence, and does not suggest that negligence as defined being present the defendant was liable. This question was covered by instruction No. 2.

■ While something might have been added by way of understandability if the instruction had included an admonition that there would be no liability unless the negligence as defined proximately contributed to the accident, we cannot say that omission of such language under the circumstances here present constituted reversible error. This is true, first, because the instructions are to be considered as a whole, and if they fairly present the law applicable to the issues, that is all that is required. Barakos v. Sponduris, 64 N.M. 125, 325 P.2d 712; Irwin v. Graham, 62 N.M. 72, 304 P.2d 875; Fowler v. Franklin, 58 N.M. 254, 270 P.2d 389. We have already set forth the basis upon which we conclude that considered together the instructions correctly advised the jury concerning the law.

■■ A second reason why defendant's position is not well taken arises from the fact that no objection was made to the instruction because of its omission of any reference to proximate cause. As already noted, the objection stated was to the effect that it was "not sustained by the evidence and is so worded as to place undue emphasis covering conduct of the Defendant un-

der the circumstances." Defendant argues that this language is a compliance with § 21–1–1(51) (g), N.M.S.A.1953; and that failure to mention proximate cause in the instruction resulted in placing undue emphasis on the question of defendant's alleged violation of § 64–18–18, N.M.S.A.1953.

§ 21–1–1(51) (g), N.M.S.A.1953, requires that, "For the preservation of any error in the charge, objection must be made or exception taken to any instruction given: * * *" It is not sufficient that the objection be in general terms. The court must be advised of the error therein so he may have an opportunity to correct it. Lucero v. Torres, 67 N.M. 10, 350 P.2d 1028; Zamora v. Smalley, 68 N.M. 45, 358 P.2d 362, decided January 6, 1961; Louderbough v. Heimbach, 68 N.M. 124, 359 P.2d 518, decided February 17, 1961. If, when he stated his objection, defendant was thinking of the absence of any reference to "proximate cause" in the instruction as framed, his words were certainly well chosen to obscure that fact.

The following language of Justice McGhee in the case of Frei v. Brownlee, 56 N.M. 677, 248 P.2d 671, 676, is particularly appropriate:

"It will be noted the defendant did not object to the giving of the instruction on the ground it introduced a false issue in the case, except inferentially.

Counsel should have been more explicit in their objection and should have taken the court into their confidence."

The trial judge would have had to be something of a mindreader to have understood that his failure to include advise concerning "proximate cause" in the instruction was the basis for defendant's objection. The second portion of defendant's point II, concerning instruction No. 10 is ruled against him.

Defendant's point III is likewise without merit. He complains that the trial court refused to permit him to explain his reasons for pleading guilty to a charge of driving on the wrong side of the road growing out of the accident. The record discloses that while defendant was on the stand as an adverse witness he was asked certain questions and answered as follows:

"Q. Were you given a ticket after the collision? A. Yes. I do not know—

"Q. Was that for either driving on the wrong side of the divided highway or for reckless driving, one of the two? A. I do not know; I should think—

"Q. I am trying to find out if you were given a ticket for one of the two? A. I could not answer that whether it was for reckless driving or driving on the wrong side of the road.

"Q. But it was one of the two, was it not? A. It must have been one of the two.

* * * * * *

"Q. Do you know if it was one of the two? A. Yes.

"Q. It was one of the two? A. Yes, it must have been.

"Q. Did you or did you not plead guilty to that charge? A. I went in there and paid my fine and pleaded guilty, I guess."

Thereafter, when being examined by his counsel the following transpired:

"Q. There has been testimony you received a ticket for reckless driving or being on the wrong side of the road, and I believe you said you paid a fine? A. Yes.

"Q. Why did you do that? A. I just figured it was what I had to do.

"Mr. Schauer:—We object to the question as the witness has already testified he paid the fine and pleaded guilty.

"The Court:—I think he said he did plead guilty, the objection is sustained."

Defendant argues that he was thereby prevented from explaining the reasons and circumstances for the plea, and states that he inquired of the court whether or not he could explain and the court ruled he could not. The difficulty with the argument is that the record fails to disclose any such inquiry by counsel or ruling by the court. We are limited by the record before us as to what transpired, § 21–2–1(17), subd. 1, N.M.S.A.1953; and cannot consider matter not included therein. Porter v. Robert Porter & Sons, Inc., 68 N.M. 97, 359 P.2d 134; Hamilton v. Doty, 65 N.M. 270, 335 P.2d 1067.

It thus appears from the record that defendant was asked whether or not he had pleaded guilty to the charge to which he gave an equivocal answer. Counsel then stated an objection to the effect that defendant had already admitted that he pleaded guilty and paid a fine, with which statement the court agreed and announced the objection was sustained. Even so, the question had been answered. Also, no tender was made of proposed proof concerning circumstances or reasons for the plea of guilty so as to apprise the court of the purpose of the questions or the nature of the evidence which he desired to have considered. As a matter of fact, there was nothing in the question and answer that indicates an explanation of the plea was being attempted. In such circumstances this court has no way of knowing if the evidence which was excluded was proper or material, and accordingly will not consider such a claim of error on appeal. Diamond X Land & Cattle Co. v. Director General of Railroads, 27 N.M.

675, 205 P. 267; Davis v. United States Fire Ins. Co., 35 N.M. 381, 298 P. 671.

In his fourth point defendant complains that the court permitted a Dr. Herring, an air force flight surgeon who examined plaintiff to determine if he was physically fit for military duty in the air corps, to testify concerning his disability as a civilian. It appears that when Dr. Herring was offered as a witness and his qualifications as a medical expert or witness were being offered, counsel for defendant stated that any "further qualifications" of the witness would be waived. Thereafter, when the witness was asked to express an opinion as to the extent of plaintiff's disability to pursue his civilian activities, objection was made on the ground the doctor was not qualified to give such an opinion, and thereafter when the witness stated that the examination of plaintiff had not been for the purpose of determining disability in civilian life a motion was made to strike the testimony previously given in this regard. There are two simple answers to defendant's contention. First, whether an expert has the necessary qualifications to testify on any given proposition is within the discretion of the trial court and the court's ruling will not be disturbed unless that discretion has been abused. State v. Deming, 66 N.M. 175, 344 P.2d 481, 77 A.L.R.2d 964; State v. Padilla, 66 N.M. 289, 347 P.2d 312. Second, having waived any proof of qualifications, defendant should not be heard to complain that the witness was not qualified to testify concerning disability for civilian activities. Clearly, there was no abuse by the trial court of its discretion.

Next, defendant complains concerning the cumulative nature of the proof permitted by the court on the question of damages sustained by plaintiff in loss of earnings and earning capacity. This issue is related to his sixth point wherein he complains that the verdict was so excessive as to indicate passion, prejudice, partiality and sympathy, or a mistake as to the proper measure of damages.

It thus appears that under point V defendant would limit the proof of damages and not permit accumulation of testimony concerning the same while at the same time he complains that the proof was insufficient to support the verdict of the jury.

Here, again, we are in the area of the court's discretion. Unless it is made to appear that the trial court abused its discretion in permitting plaintiff to accumulate evidence of elements of damage, his actions will not be reversed on appeal. Braack v. Bailey, 32 Wash.2d 60, 200 P.2d 525; Alukonis v. Kashulines, 96 N.H. 107, 70 A.2d 202, 17 A.L.R.2d 1125; Caron v. Hazlett, 321 Mass. 671, 75 N.E.2d 233. Also, the question of the amount of damages, being one of the principal controverted issues, we cannot agree with defendant that in allow-

# 142

ing two witnesses to testify concerning the particular facts could be held an abuse of discretion by the trial court. We subscribe to the following language of the Supreme Court of Missouri in the case of St. Louis, Memphis & Southeastern Railroad Company v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 868, 9 L.R.A.,N.S., 426, 116 Am.St.Rep. 499, 8 Ann.Cas. 822:

" * * * The issue of damages was the main issue in the case. That trial courts are allowed a discretion ought not to be gainsaid. The most irritating and unjustifiable delays would arise if trial courts had no discretion,—were left to the volatile caprice of counsel alone. On collateral and incidental issues, as, for example, the general reputation of a witness, or an issue upon a motion for change of venue, or for costs, etc., it is a wise and a settled rule to allow trial courts wide discretion; and error predicated upon the exercise of such discretion should be palpable and manifest to be held prejudicial. Nor will we lay down any hard and fast rule circumscribing the power of trial courts, in the economy of time and dispatch of business, to put some reasonable bounds on the introduction of witnesses on a main issue in a civil suit; especially so where the evidence on a single point is not controverted, or where it is distinctly cumulative in quantity and quality."

See, also, West Skokie Drainage Dist. v. Dawson, 243 Ill. 175, 90 N.E. 377; Henson & Sons Coal Company v. Strickland, 152 Ark. 203, 238 S.W. 5, 21 A.L.R. 328; and note in 48 A.L.R. 947.

As already mentioned defendant's last point raises the issue of whether or not the verdict of the jury was so excessive as to indicate passion, prejudice, partiality and sympathy or a mistake as to the proper measure of damages. In addition, under the point it is asserted that the verdict was excessive because the trial court refused to strike damages to the automobile and an item of $500 included in plaintiff's proof as to possible future medical expense.

■ The issue concerning the damages to the automobile arises by virtue of the fact plaintiff alleged ownership. On cross examination he admitted title was registered in the name of Roswell Wrecking Company, a copartnership consisting of himself and one M. L. Jay. Thereafter, the partner, Mr. Jay, testified he made no claims to the automobile, and that it belonged to plaintiff. It further appears that at the time of trial Roswell Wrecking Company had been incorporated, but there is absolutely no proof that the car in question had in any way been transferred to it. Defendant asserts that title being in the name of the partnership, all partners were necessary parties under Sec. 21-1-1(17) (a), requiring every suit to be prosecuted in the

name of the real party in interest. We stated in Reagan v. Dougherty, 40 N.M. 439, 441, 62 P.2d 810, 811:

"Tests to determine if one is 'a real party in interest' is whether he is the owner of the right sought to be enforced (Whiteman v. Taber, 205 Ala. 319, 87 So. 353), or whether he is in a position to release and discharge the defendant from the liability upon which the action is grounded. Broderick v. Puget Sound, etc., Co., 86 Wash. 399, 150 P. 616."

We recognize a conflict of authority on the question of whether a judgment for plaintiff would be res judicata against his copartner concerning claims arising out of partnership property. For a discussion see note in 11 A.L.R.2d 847, 863. However, it is not necessary for us to here resolve this problem. It is sufficient to point out that the partner who might not have been barred from suing on his own behalf or that of the partnership having disclaimed any interest in the property and having admitted ownership in plaintiff, was no longer a necessary party because he had no interest in the outcome of the litigation. Jennings v. Smith, 5 Cir., 242 F. 561; Grant County Deposit Bank v. McCampbell, 6 Cir., 194 F.2d 469; Delaware County v. Diebold Safe Co., 133 U.S. 473, 10 S.Ct. 399, 33 L.Ed. 674. Compare Turner v. New Brunswick Fire Ins. Co. of New Brunswick, N. J., 45 N.M. 126, 112 P.2d 511. He certainly would not be heard to assert otherwise at a later date.

Concerning the complaint with reference to the $500 of future medical expense which the court refused to strike, it need only be pointed out that Dr. Schultz, a qualified orthopedist, testified that in his opinion plaintiff should have a spinal fusion performed and the reasonable cost for such an operation would be approximately $1,750. It was developed on cross examination that in performing such an operation the witness would have associated with him a Dr. Miller who is a neuro-surgeon, and that there was included in the total of $1,750, the sum of $500 to cover Dr. Miller's service, and this amount was arrived at through knowledge of a charge in this amount made by Dr. Miller for such services in one case.

We have recently had occasion to hold that where there was no evidence at all as to what future medical expenses might reasonably be expected to amount to, it was error to include such an item as an element of damages to be determined by the jury. Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798, decided June 15, 1961. However, this does not mean that the proof must be definite or certain. All that is required is that the testimony be from a qualified witness and be based on his knowledge and experience. As already noted in discussing point IV supra, the question of whether an expert

is qualified to testify on a given subject is peculiarly within the trial judge's discretion to determine. The fact that Dr. Schultz had only seen one bill of Dr. Miller in a similar case in no sense disqualified his answer. He was not asked and it does not appear of how many bills of other qualified and he claimed to be qualified to give an average figure. We do not think that the court erred in overruling defendant's motion concerning the $500 item.

Defendant's complaint concerning the size of the verdict is likewise without merit. In the recent case of Vivian v. Atchison, Topeka and Santa Fe Railway Company, 69 N.M. 6, 363 P.2d 620, we reviewed our decisions and discussed the rules to be applied in determining when a new trial should be granted or a remittitur ordered because of an excessive verdict. We there said:

"It must be kept in mind that the amount of damages to be allowed is primarily a question for the jury, but where it appears that the verdict of the jury is extremely excessive, the court may impose a restraint upon the jury. The court should not interfere with the verdict of the jury upon light or arbitrary grounds. Hall v. Stiles, supra. (57 N.M. 281, 258 P.2d 386).

"In determining whether a verdict is excessive, the appellate court does not weigh the evidence, as in the case of a trial court, but instead determines the excessiveness as a matter of law. Sanders v. Illinois Central R. Co., 364 Mo. 1010, 270 S.W.2d 731. Where the trial court, as here, has allowed the verdict to stand, the appellate court will not weigh the evidence but will look to see whether the evidence, viewed in the light most favorable to upholding the verdict, affords substantial support for the verdict. If it affords such substantial support, the verdict must be affirmed; if it does not, it must be reversed. Sanders v. Illinois Central Railroad Co., supra."

We do not perceive that it would serve any useful purpose to detail the injuries suffered by plaintiff. Suffice it to say, they were serious, and painful, and required at least two operations, and he was left with a certain degree of permanent disability to carry on his activities as he had done before. In addition, unless a waiver is obtained he is disqualified to continue his activities in the U. S. Air Force Reserve. We have not overlooked defendant's contention that plaintiff was suffering difficulties with his back before the accident. Although the proof does not disclose that his income has been reduced from what it was before the accident, it is clear that there has been a loss of earning ability because of his disability which is permanent. This is what is required as a basis for damages rather than loss of actual earnings. Baros v. Kazmierczwk, supra. Although

we might be inclined to agree that the verdict would appear to be generous, and possibly more than we would have awarded, when we view all the evidence and circumstances in a light most favorable to support the judgment, we cannot say as a matter of law that it is excessive.

It follows from what has been said that the judgment should be affirmed.

It is so ordered.

CARMODY and NOBLE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.