## GREAT ATLANTIC & PACIFIC TEA CO. v. RANDOLPH.
### No. 4962.

Circuit Court of Appeals, Third Circuit.
March 14, 1933.

John A. Metz, of Pittsburgh, Pa., for appellant.

Oliver K. Eaton, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In this case Mrs. Randolph brought suit against the Great Atlantic & Pacific Tea Company to recover damages for injury caused by her slipping and falling on its store floor, made dangerous by its alleged negligence. She recovered a verdict, and from a judgment entered thereon defendant appeals. The substantial question involved is whether the trial court was constrained to give binding instructions for defendant.

The proofs tended to show defendant had a provision and meat store which plaintiff patronized. In such store it had a pay telephone which customers used. To reach the phone booth, one's pathway led between the meat cooler and the meat block to which the meat was carried and there cut and the residue returned to the cooler. This passageway defendant used to clean and sprinkle with sawdust, but, in spite of such precautions, the nearness of the meat block to the passage was such that particles of meat and fat flew from the block to the passageway. The proof was that this was the usual, and not the unusual, situation. In that regard a witness, who before the accident went to the store several times a week, testified she had often seen scraps of meat in the sawdust. "Yes, I would say almost always there would be scraps on that floor around there * * * I particularly know I had to be careful in walking there." Another witness testified:

"Q. Now, at times, when you went back there, you noticed some meat scraps or something on the sawdust? A. Yes.

"Q. You don't remember any particular date that you saw anything there? A. There was very few times there wasn't something.

"Q. Well, you didn't pay any particular attention to it? A. No. I was careful going back there.

"Q. But you don't remember any particular day, as to what you observed on one particular day, do you? A. Well, it was very nearly every day.

"Q. You went back there practically every day? A. Yes.

"Q. But you didn't pay any particular attention to what was on the floor? A. Yes, I did.

"Q. It was covered with sawdust? A. Because it was slippery."

The proof of another customer was:

"Q. Where you turn around to go to telephone. Did you have occasion to notice, or did you notice, the condition of that passageway, say, the three months prior to March 24, 1928? A. Yes, sir.

"Q. And what did you notice with reference to it, as to what the floor was covered with, and what was on it? A. Sawdust.

"Q. Anything else? A. Meat scraps.

"Q. How frequently would you see meat scraps around that meat block? A. Why, it was on there all the time.

"Q. By that you mean every time you went there? A. Yes, every time I passed."

Still another witness, a boy who worked in the store, testified:

"Q. And it was while you were working for Mr. Randolph over there on the meat side that you noticed something sticky on the floor? A. Yes, sir.

"Q. And while you were working under Mr. Randolph on the meat side, this second time you worked there, how many times did you notice something sticky on the floor? A. There was most always sticky stuff on the floor.

"Q. Where was this? A. Laying around the block.

"Q. Right by the block? A. Laying around the block.

"Q. The floor was always covered with sawdust? A. This sticky stuff was on top of the sawdust.

"Q. Now, as I understand your testimony on direct examination, you noticed this sticky stuff there once or twice? A. It was mostly always there.

"Q. On top of the sawdust? A. Yes, sir."

Another witness, who was a meat cutter and who had been employed in the store, testified, as to the presence of meat and bone on the passageway, that "there was pieces of bone and scraps of meat naturally falls off when you are cutting; you can't help it; it falls off the block." He said that was the condition every day, and that the clerks were very careful when they walked on the passageway. "You had to be awfully careful. The butcher was very careful." In addition, there was proof of two customers having slipped and fallen. All of this testimony referred to the situation for three months immediately preceding the accident.

Conceding there is nothing in the record to show the defendant had express notice of the presence on the pathway of the particular piece of meat on which the plaintiff slipped, the question still remains, had it constructive notice, which notice, under O'Dwyer v. Northern Market Company et al., 24 App. D. C. 81, would justify a verdict? We think the situation and the proofs were such as tended to charge the defendant with constructive notice. It permanently located and kept its meat block so close to the telephone pathway that pieces of fat, meat, and bone would, and did, reach such pathway when the block was used. The presence of these clippings on the pathway was no occasional, isolated, or unexpected happening, but was the usual, continuous, and foreseen result incident to the use of a meat block placed beside a pathway. Moreover, as a result of such nearness, there was a constant presence of such clippings on the pathway. Falls of customers thereon occurred. Defendant's clerks saw the slippery character of the pathway and avoided it. This condition was so protracted and usual that a jury could infer knowledge thereof by the defendant with consequent negligence in permitting such dangerous condition of things to continue. The present case is not one of an orange or banana peel or the like lately thrown down by some careless person and of which the one sought to be charged had no knowledge, but a case where the defendant itself, in carrying on its business, was constantly throwing slipping-causing clippings on the pathway its customers used.

Finding no error in the court refusing to give binding instructions for the defendant, seeing the court in its charge properly disposed of all pertinent questions, and this court having given due consideration to all questions raised by the defendant's argument and brief, we limit ourselves to affirming the judgment below.