377 P.2d 663

Robert MAHONEY and Betty Mahoney, Plaintiffs-Appellants and Cross-Appellees,

v.

J. C. PENNEY COMPANY, a corporation, Defendant-Appellee and Cross-Appellant.

No. 6846.

Supreme Court of New Mexico.

June 26, 1962.

Rehearing Denied Jan. 28, 1963.

Bean & Snead, Roswell, for appellants and cross-appellees.

Hervey, Dow & Hinkle, S. B. Christy IV, Roswell, for appellee and cross-appellant.

CHAVEZ, Justice.

Plaintiffs-appellants, Robert Mahoney and Betty Mahoney, his wife, filed suit in two causes of action against defendant-appellee, J. C. Penney Company, for damages resulting from injuries to Betty Mahoney, sustained from a fall in defendant's store. The complaint alleged that the fall resulted from the negligent acts or omissions on the part of defendant, in that it maintained a stairway in its Roswell store for the use of business invitees; that on the occasion in question it failed to keep the same reasonably clean and failed to maintain the same in a safe condition; that said condition was known, or should have been known, to defendant at the time in question. Defendant denied the material allegations of the complaint and to each cause of action set forth a defense of contributory negligence on the part of plaintiff, Betty Mahoney. A further allegation was made by amended complaint that the premises were under defendant's exclusive control and that the accident would not have happened without an absence of due care. The amended complaint was deemed denied on the basis of defendant's original answer.

The cause was tried to a jury and evidence introduced by plaintiffs. At the close of plaintiffs' case, defendant moved for a directed verdict. The trial court withheld its ruling upon said motion and defendant rested without introducing any evidence. A jury verdict was returned in favor of plaintiffs; Robert Mahoney being awarded the sum of $7500 for past and future medical expenses and for loss of his wife's services and companionship. Plaintiff, Betty Mahoney, was awarded the sum of $12,840 for physical disablement, pain and suffering.

Thereafter defendant filed a motion for judgment notwithstanding the verdict and alternatively for a new trial. Upon hearing, the trial court entered an order granting the motion for judgment notwithstanding the verdict and denied the application of defendant for a new trial. It is from this order setting aside the jury verdict that plaintiffs appeal. The parties will be referred to as they appeared in the court below.

Defendant, in the event this court should determine that the judgment notwithstanding the verdict was erroneously granted, cross-appeals from the denial of its alternative motion for a new trial, urging specifically in its brief that the jury verdict was against the weight of the evidence and that the trial court committed prejudicial error in submitting instruction No. 3 to the jury. This instruction reads as follows:

"You are instructed that a temporary slippery or sticky place upon the floor of a business establishment is not necessarily negligence, unless it appears that the condition had existed for a time sufficient to permit the personnel of the establishment to become aware of it. You are further instructed, however, that even though the condition was temporary, if the condition was a recurring one, and the personnel of the establishment had knowledge of the fact that the condition recurred from time to time, or should by the exercise of reasonable care have had knowledge of the condition from time to time, then, and in that event, you are permitted to infer that the existence of the condition itself was negligence, even though the defendant lacked knowledge of the particular condition here in question at the time of the occurrence alleged.

"In determining the issue of negligence in this cause, therefore, you will not find in the cause that negligence was present and attributable to the defendant by the mere fact that a condition may have existed at the time of the alleged fall, unless you further find that the condition of the stairway was one which recurred from time to time,

and was one of which the defendant through its agents and employees knew would recur, or by the exercise of reasonable care should have known would recur, in which event you may infer that the defendant was negligent in this cause, not because of the alleged spot in question, but by reason of a failure to exercise reasonable care to remedy or prevent the recurrence of the said condition, if you find the same to have existed."

The testimony shows that the accident occurred in defendant's store about 12:00 o'clock noon on Saturday, May 9, 1959, when plaintiff, Betty Mahoney, accompanied by her thirteen-year-old daughter, entered defendant's store and proceeded from the main floor up the stairway and onto the second floor, looking for some type of material. Failing to find the material she desired, she came down the stairway onto a small landing and started from the landing down two steps to the main floor of the store when her foot stuck on some "sticky substance" on the steps and she fell forward to the main floor of the store, catching herself on her hands with her legs extending back onto the steps. She saw a sticky substance on the steps after the fall but did not examine it and was uncertain as to its exact location at the time of the fall.

Defendant's attorney, in his oral argument before this court, summed up the facts. as follows:

"Mr. Sneed [plaintiffs' attorney] has initially argued that there was an accident. We don't deny it. He states that either proximately caused—and we say, maybe, factually caused—it is immaterial. Mrs. Mahoney did fall on something, and as a result of that the lady is injured. I know Mrs. Mahoney personally; she is a very honest. witness. And the lady is hurt. We do not deny it. Next, he says that there was a dangerous condition on that stairway. Now, gentlemen, I wouldn't argue to you that there wasn't some sticky substance or gum or something on that stairway at the time Mrs. Mahoney fell. I am confident there was. And I certainly can understand, although I found no case on it, that gum or a sticky substance is a dangerous condition. Of course it is. We don't deny that. * * * We say, again, we admit the accident; we admit that that is the reason she was injured; we realize the gum was there. * * *"

All parties agree that the sticky substance was thrown on the stairway by another customer and not by one of defendant's employees. Plaintiffs concede that defendant.

had no actual knowledge of its presence and that constructive knowledge cannot be imputed to defendant solely by reason of its dirty, sticky appearance. It is not known when the gum was deposited on the stairs. It may have been only a few minutes before plaintiff descended them or it may have occurred early that Saturday morning when the store opened. Absent any other facts, it is clear that plaintiffs cannot recover. Nor are the parties in disagreement over the general principles governing a proprietor's liability to his invitees.

Plaintiffs contend, however, that there are certain additional facts in the record which distinguish this case and which would permit recovery, notwithstanding the fact that they cannot prove how long the particular piece of gum had remained on the stairs. These additional facts are disclosed by Mr. E. E. Cornelius, manager of defendant's store, who testified that he had been manager for six years; that the stairway in question was intended for the use of customers of the store and was the only access from the main floor to the balcony area; and that defendant was solely responsible for cleaning these stairs. He also testified as follows:

"Q Have you yourself ever had occasion at anytime to inspect the aisles, the passage ways, the stairs, the platform, the steps up in the store in regard to their condition whether they were clean or not?

"A Yes, sir, daily.

"Q. On any of those occasions on your inspections have you found deposits of gum on the steps, on the landing, and on the stairs?

"A Yes, sir.

"Q With reference to the date of May 9, 1959, [the date of the accident] prior to that date were you making such inspections?

"A Yes, sir.

"Q And on those occasions did you find gum or deposits of gum or other material on the steps?

"A Yes, sir.

"Q On more than one occasion?

"A Yes, sir.

"Q Would you say that was a daily occurrence?

"A Not during my inspections. Ordinarily they are cleaned, the whole store is cleaned before I would inspect it. I mean, any gum I might find or trash would be accumulated throughout the day.

"Q Did you inspect the store from time to time on a Saturday?

"A Yes, sir.

"Q I mean the stairs?

"A Yes, sir.

"Q Is the condition any worse on Saturday than any other day?

"A I think the general condition of the store is worse on Saturday, yes, sir.

"Q Is that by reason of the fact I presume you have more traffic on Saturday?

"A Yes, sir."

He then testified that pictures of the stairs taken some two weeks after the accident, and which showed either spots of gum or gum residue, were representative of the usual condition of the stairs.

From the above testimony, plaintiffs argue that defendant, through its agent, knew that customers deposited gum and other trash on the stairs, floors and aisles of the store—that this was not an isolated occurrence but a recurring condition. Further, although the actual cleaning and inspection routine is not clear from Mr. Cornelius' testimony, it would appear that the store was cleaned and inspected only once a day, either at night when the store closed or in the morning before it opened. That there was merely a daily cleaning and inspection is apparently conceded by defendant. Whether Mr. Cornelius inspected before or after the cleaning is not clear from his testimony, but defendant's answer brief indicates that the inspection was after the cleaning to see that it was properly done.

The actual condition of the stairs on the day of the accident was testified to by both plaintiff, Betty Mahoney, and her daughter, Sharon. The latter testified as follows:

"Q Can you tell us anything about the steps that are there in the store?

"A They had a lot of gum on them.

\* \* \* \* \* \*

"Q You said something about gum on the floor, is that right?

"A Yes, sir.

"Q How could you tell it was gum, was it kind of sticky?

"A Well, it was long and looked like gum that had been stepped on before.

"Q Did it look like it had been sticky?

"A I do not know; it was just lumps of gum all over the store.

"Q Where—were they round or flat?

"A What do you mean, did they come up?

"Q Yes, when somebody spits out a piece of chewing gum it is kind of round?

"A Yes, sir.

"Q Is that what it looked like?

"A As I remember it had been stepped on before.

"Q What was the color of the gum?

"A It was dirty.

"Q Did it look like it was fresh gum?

"A It is hard to tell; it had not been there for a long time, though.

"Q It looked like it was pretty fresh gum?

"A Yes, sir."

Plaintiff, Betty Mahoney, testified:

"Q What happened as you left the material department?

"A I reached the landing and on leaving the landing to the first floor I fell.

"Q Can you tell us how you happened to fall?

"A I know that I stepped in something sticky and it threw me off balance.

"Q In other words, one of your feet caught?

"A One of my feet caught.

"Q Did you see actually what it was you stepped in?

"A I do not know.

\* \* \* \* \* \*

"Q You said you slid on something sticky?

"A I stepped in something sticky and it momentarily made me lose my balance.

"Q Do you know what that substance was?

"A I assume it was gum.

\* \* \* \* \*

"Q Did you look back on the stairs to see what you fell on?

"A I looked at the stairs and they were dirty.

"Q You said they were dirty; now, what was on them that made them dirty?

"A They had black spots of gum.

"Q Gum?

"A Maybe. But some black wads of some substance that had been squashed—

"Q Did it look like something—

"A And there was something sticky on the stairs where I had been. Now, I would not say it was gum, as I did not examine it.

"Q But it was some foreign substance?

"A Yes, sir.

"Q And it was sticky?

"A Yes, sir.

"Q You heard Sharon mention the gum when she testified?

"A Yes, sir.

"Q Is that your recollection of the same thing?

"A Yes, sir.

"Q Was it fresh gum and sticky?

"A Yes, sir."

There have been relatively few "slip-and-fall" cases in New Mexico. These are Barakos v. Sponduris, 64 N.M. 125, 325 P.2d 712; Kitts v. Shop Rite Foods, Inc., 64 N.M. 24, 323 P.2d 282; Barrans v. Hogan, 62 N.M. 79, 304 P.2d 880; and De Baca v. Kahn, 49 N.M. 225, 161 P.2d 630. In addition to these true "slip-and-fall" cases, there have been several other cases involving the duty of a business proprietor to his invitees. The most recent of these latter cases is Gonzales v. Shoprite Foods, Inc., 69 N.M. 95, 364 P.2d 352. The Gonzales case involved injuries sustained by a customer when a small box of dry starch fell from its stack in a self-service store, striking a bottle of liquid starch and causing the latter to crash onto her foot. In the Gonzales case we stated the rule as follows:

" 'This court has taken the position that the proprietor of a place of business to which any and all members of the public are invited is not a guarantor of the safety of those who enter such place of business. It is the established holding in this court that, in order to render the proprietor of a place of business liable in damages to another for injuries sustained in that place of business, he must be guilty of negligence; and that such negligence must consist of the maintenance of a dangerous condition in or about the place of business and of knowledge on the part of the proprietor of the existence of the dangerous condition, or there must be evidence giving rise to inferences which charge the proprietor with knowledge.'

\* \* \* \* \* \*

" \* \* \* we have said that what constitutes due care of an inviter is always to be determined by the circumstances and conditions surrounding the transaction under consideration. De Baca v. Kahn, supra. \* \*"

De Baca v. Kahn, supra, is one of the earliest "slip-and-fall" cases in this jurisdiction, with the possible exception of Snodgrass v. Turner Tourist Hotels, 45 N.M. 50, 109 P.2d 775, which involved a change in level accompanied by poor lighting, rather than the presence of a slippery spot or a foreign substance on the floor or stairs. Similar cases are Seal v. Safeway Stores, 48 N.M. 200, 147 P.2d 359, and Dominguez v. Southwestern Greyhound Lines, 49 N.M. 13, 155 P.2d 138. A careful examination of the De Baca case discloses.

that, at most, plaintiff proved only the existence of an oily spot on the floor upon which she slipped and fell. Even this fact was controverted, but the reviewing court was compelled to accept its existence. The court refused to infer, from the mere existence of the spot itself, that defendant had recently oiled the floor, all uncontroverted and unimpeached testimony being to the contrary. There was nothing in the record to show that the defendant knew or should have known of its existence; no one had ever fallen in the store other than plaintiff, except some children who, when trying on new boots, would run and sometimes try to slide and would fall.

In holding in De Baca v. Kahn, supra, that plaintiff had failed to prove any actionable negligence, this court propounded certain legal principles which have guided subsequent "slip-and-fall" litigation in this state. In addition to the statements quoted from the Gonzales case, this court, in the De Baca case, also stated:

"* * * To entitle the plaintiffs to recover, it is necessary that they show some specific act of negligence on the part of the defendant, or the existence of conditions so obviously dangerous as to amount to evidence from which an inference of negligence would arise. * * *

"The true measure of liability is expressed by Ruling Case Law in 20 R.C. L. p. 56, Sec. 52, as follows:

" 'The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons, even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. In the language of Mr. Justice Harlan, the owner is liable to invited persons for injuries "occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or to those who were likely to act upon such invitation." '

This court then quoted from several cases, all involving non-recurring or isolated conditions, and continued, stating:

"We are committed to the view that the proprietor of a store is not an insurer against accidents to his customers but is bound only to exercise rea-

**254**

sonable care to keep his premises, which the public is tacitly invited to use, safe for that purpose. Furthermore, the mere fact that an invitee falls on the floor of a store does not of itself raise a presumption of negligence on the part of the owner. What constitutes due care of an inviter is always to be determined by the circumstances and conditions surrounding the transaction under consideration.

"The measure of defendant's duty is that of reasonable care; he was bound to exercise reasonable care to keep his premises safe for the ingress, progress and egress of customers and other authorized visitors. * * *"

Similar in its facts to the De Baca case is Kitts v. Shop Rite Foods, Inc., supra. The sole proof of plaintiff, viewed in a light most favorable to plaintiff's contention, was that the floor was very slippery at the place where she fell. This court, in the Kitts case, stated:

"We are not prepared to say that proof of a slippery spot on a floor, standing alone, will support an inference that it resulted from the proprietor's negligence. De Baca v. Kahn, * * *. It must be borne in mind that the doctrine of *res ipsa loquitur* does not apply in slip and fall cases. Persons frequently sustain falls where and when others do not. There is a

total absence of any evidence in this case as to how or by whom the slippery spot was created. No evidence was introduced tending to show that the defendant was negligent in the treatment of the floor or that the type of polish used was improper or was used in excessive amounts. The creation of a slippery condition by the defendant is not a reasonable inference from the whole of the evidence. A slippery condition may arise temporarily in any store though the proprietor has exercised due care. * * *

"We are also unable to find any evidence in the record from which it may fairly be inferred that the defendant had, or should have had, knowledge of the slippery condition of the floor. De Baca v. Kahn, supra. The plaintiffs are entitled to have inferences drawn in their favor, but they must be reasonably based on other facts established in evidence and not based merely on conjecture or on other inferences. Caldwell v. Johnsen, 63 N.M. 179, 315 P.2d 524. Proof of a slippery spot on a floor, without more, is not sufficient to give rise to an inference that the proprietor had knowledge of the condition."

In both of the above cases, the initial contention of plaintiffs was that the condition had been created by the defendant

or his agents. In such event, it would have been unnecessary to prove how long the condition had existed because knowledge would have been imputed to the principal. Boucher v. Paramount-Richards Theatres (La.App.1947), 30 So.2d 211; Food Fair Stores, Inc. v. Trusell (Fla. 1961), 131 So.2d 730, and cases cited therein.

The third case of interest from New Mexico is the case of Barakos v. Sponduris, supra. Plaintiffs rely on this case, in particular, as authority to support the giving of instruction No. 3. A careful reading of the Barakos opinion and of the transcript in that case, shows that the real argument centered around the existence of the spot itself. This court refused to reweigh the evidence, finding that there was substantial evidence to support the finding of the trial court. This court observed that although the defendant had personally supervised the operation of the restaurant and had passed through the area only moments prior to the fall, and stated:

"The mere presence of a slick or slippery spot on a floor does not in and of itself establish negligence, for this condition may arise temporarily in any place of business. Kitts v. Shop Rite Foods, Inc., * * *. However, this case is clearly distinguishable from a situation where a fall is caused by a momentary slick or slippery condition of which a proprietor has no notice and thus no opportunity to remove or guard against it. If, as testified by witness Gallanos, the messy condition in the rest room area was a continuing occurrence—in effect a pattern of conduct—then an inference could reasonably be drawn that the defendant had, or should have had, knowledge of this condition. * * *"

This court thereby inferred not only knowledge but the existence of the spot from the testimony of the witness that the condition was a recurring one which she cleaned up each morning, stating:

"It should be noted that the inference as to defendant's knowledge is not based on the inference of a wet and messy, and therefore dangerous, condition. We have here two separate inferences arising partially out of the same testimony."

The case which we consider nearest to the instant case on its facts is the case of Barrans v. Hogan, supra. The defendant was the owner of a cafeteria, in which plaintiff fell due to the alleged presence of a piece of pastry. There was direct conflict again in the testimony; but as in the De Baca case, supra, the reviewing court assumed that the item was present. This

court, in the Barrans case, pointed out the following:

"\* \* \* It is true, of course, that particles of food may escape the notice of the girls who do the cleaning after meals have been finished, and that people may slip and fall on such particles. Such a condition, as far as evidence in this case shows, could exist at any place in the cafeteria, even on the stairway. This is a matter as well known to the patrons of the cafeteria as to the proprietor. The proprietor, according to the evidence, had done everything he could do to make the place reasonably safe; and had succeeded to the extent that there had been no such falls previously in the seven years he had operated this place of business. If his instructions to the girls working in the cafeteria are fully carried out, there will be no food on the floor at any time creating a dangerous condition."

An examination of the transcript in the Barrans case shows that there was no proof adduced that the proprietor's instructions had not been carried out, but all evidence was to the contrary. This court then stated that there was no actual knowledge of the particular condition and nothing to support an inference that defendant had constructive knowledge, or should have had knowledge, of the existence of that piece of pastry. This court's comment to the effect that:

"\* \* \* To say that the defendant did have knowledge that particles of food might fall to the floor at any time, is not sufficient to charge him with negligence as the cause of plaintiff's misfortune."

must be read in the light of the facts of the case, which are that defendant did everything a reasonable man would do under the circumstances.

We turn now to the decisions of other jurisdictions in an effort to find cases more closely in point, involving, as the instant case does, the situation in which a defendant is aware that a third person may create a possibly dangerous condition. The cases fall into certain patterns. We ignore all those cases involving isolated, non-recurring incidents, or those cases in which the hazard involved is as obvious to the plaintiff as it is to the defendant.

One test for determining the issue of negligence is to consider whether a person of ordinary prudence could or should have foreseen or anticipated that someone might be injured by his action or nonaction. If so, that person is negligent. Harris v. Joffe, 28 Cal.2d 418, 170 P.2d 454. As stated by the Pennsylvania court in Polenske v. Lit Brothers, 18 Pa.Super. 474, cited by defendant, negligence is the want of care under the circumstances. California,

like New Mexico and the majority of the jurisdictions, holds that a storekeeper is not an insurer, and puts the requirement of knowledge in its proper perspective in Bridgman v. Safeway Stores, Inc., 53 Cal. 2d 443, 2 Cal.Rptr. 146, 348 P.2d 696, in which the California Supreme Court said:

"* * * The requirement of actual or constructive knowledge is merely a means of applying the general rule stated above that the proprietor may be liable if he knew or by the exercise of reasonable care could have discovered the dangerous condition, and it does not alter the basic duty to use ordinary care under all the circumstances."

See also Frazier v. Yor-Way Market, 185 Cal.App.2d 390, 8 Cal.Rptr. 335, where, after stating the rule as above set out, the court stated:

"* * * Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered the peril is a question of fact and exact time limitations cannot be imposed since each case must be viewed in the light of its own circumstances. * * *"

The Federal Court, following Louisiana decisions, in discussing this problem in Sattler v. Great Atlantic & Pacific Tea Company (D.C.W.D.La.1955), 18 F.R.D. 271, said:

"* * * There is nothing to show that there were any careless general practices in the store constituting recurrent dangers to the safety of others. * * * No evidence can be pointed out evidencing that anything other than reasonable care was used in the management of the store to keep its premises in a condition of safety. I do not say that the foreseeability that customers will drop vegetables imposes no duty of care on the storekeeper. On the contrary, the storekeeper here evidently recognized such a duty and had five check-out clerks and five bagboys whose duties, among other things, consisted in policing the general area where this accident occurred. This is not a case of careless general practices in a store. If it were, then, as pointed out in the Whalen case [Whalen v. Phoenix Indemnity Co., 5 Cir., 222 F.2d 121], it would not matter whether defendant's agents and employees were specifically notified or not."

In Whalen v. Phoenix Indemnity Co. (5 C.C.A.1955), 222 F.2d 121, the Federal Court, in rejecting defendant's contention that earlier cases had imposed a rigid requirement that the plaintiff must prove notice of the specific danger (which is the contention made by defendant in the instant case), said this:

"The rule contended for by Petitioner taken to its logical conclusion would mean that a storekeeper well aware of careless general practices in his store constituting recurring dangers to the safety of others, and who did nothing to correct those practices, would not be liable for a foreseeable injury resulting from this failure to exercise care, if the injury happened to result from a condition of which he or his agents were not specifically notified or which had not existed some considerable period of time sufficient to constitute constructive notice of the particular condition. A result more incongruous with principles of fault liability in Louisiana or elsewhere is difficult to imagine; the rule urged on us by Petitioner then cannot be correct."

It is true that the Whalen opinion was decided on the basis of *res ipsa loquitur,* but the later Sattler opinion, while rejecting the applicability of *res ipsa loquitur,* approved the portion of the Whalen holding that, in the event of a careless general practice, specific notice to the defendant is unnecessary. See also Dickey v. Hochschild, Kohn & Co., 157 Md. 448, 146 A. 282, which is different on its facts, in that the injury was caused by a structural defect in the stairway caused by wear and tear, and where we find this comment:

"* * * The rule prescribing notice actual or constructive as an essential ingredient of negligence in permitting the existence of such a defect as that which resulted in the injury in this case does not mean that before he can be charged with negligence it is necessary to notify an alleged tortfeasor of his own breach of duty, but that after he has used ordinary care to prevent or discover any such condition and it nevertheless occurs, then its existence is no evidence of his negligence unless he actually knew or had a reasonable opportunity to know of it. 45 C.J. 653–655, and text-notes."

In the Dickey case the court's remarks are made in the light of its holding that the defendant should have anticipated ordinary wear and tear, and that ordinary care required that it maintain some system of inspection which would discover the condition in time to remedy it before injuries occurred, the storekeeper having a duty to maintain its facilities so that they were reasonably safe for its invitees. This is under the rule agreed to by the majority of jurisdictions that, while he is not an insurer and *res ipsa loquitur* is inapplicable, he must keep his premises in a reasonably safe condition. Boucher v. Paramount-Richards Theatres, supra; Montgomery Ward & Co. v. Hansen, 282 Ky. 188, 138 S.W.2d 357; De Baca v. Kahn, supra; Peters v. Great Atlantic & Pacific Tea Co. (La.App.1954), 72 So.2d 562; Saari v. S. S. Kresge Company, 257 Minn. 290, 101

N.W.2d 427; Restatement of the Law, Torts, § 343.

Insofar as the conduct of third persons is concerned, it is generally held that the inviter is liable if he has not taken reasonable and appropriate measures to restrict the conduct of third parties of which he should have been aware and should have realized was dangerous. Viands v. Safeway Stores (D.C.Mun.App.1954), 107 A. 2d 118; Ellington v. Walgreen Louisiana Co. Inc. (La.App.1949), 38 So.2d 177; Scott v. Allied Stores of Ohio, 96 Ohio App. 532, 122 N.E.2d 665; Eyerly v. Baker, 168 Md. 599, 178 A. 691; Mathis v. Atlantic Aircraft Distributors, Inc., 216 Md. 262, 140 A.2d 156, 74 A.L.R.2d 647; Prosser on Torts, 2d Ed., § 78; Whalen v. Phoenix Indemnity Co., supra; Farrier v. Levin (1959), 176 Cal.App.2d 791, 1 Cal. Rptr. 742, rehearing denied 1960; Restatement of the Law, Torts, § 348.

Generally speaking, what constitutes due care in the maintenance of a floor or stairway is a question of fact to be decided by the jury. Louie v. Hagstrom's Food Stores, 81 Cal.App.2d 601, 184 P.2d 708; Tuttle v. Crawford, 8 Cal.2d 126, 63 P.2d 1128; Dickey v. Hochschild, Kohn & Co., supra; Dillon v. Wallace, 148 Cal. App.2d 447, 306 P.2d 1044. Negligence may be established by circumstantial evidence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts. McKenney v. Quality Foods, Inc., 156 Cal. App.2d 349, 319 P.2d 448. We disagree with the broad statement contained in F. W. Woolworth Co. v. Goldston (Tex.Civ. App.1941), 155 S.W.2d 830, to the effect that the evidence of negligent, slovenly housekeeping is immaterial and that the failure to sweep, clean or inspect floors cannot be a proximate cause of an injury. The decision may be justified because there is nothing in the opinion showing whether the defendant could or should have anticipated that third persons would throw debris on its floors. It is true that more frequent inspections might not have revealed the condition if it had existed for only a few moments or minutes. The defendant's negligence, however, need not be the sole proximate cause; but it may be a contributing proximate cause. Where the dangerous condition is not an isolated one, and we assume the Texas court considered the presence of a banana peel in Woolworth's a non-recurring incident, but is foreseeable because part of a pattern of conduct, a recurring incident, a general condition, or a continuing condition, then we hold that the rule most conducive to justice is that rule which holds that, absent a showing of due care, plaintiff need not prove that defendant had actual or constructive knowledge of the specific item forming part of that pattern of conduct, recurring incident, etc. Dillon v. Wallace, supra; Markman v.

Fred P. Bell Stores Co., 285 Pa. 378, 132 A. 178, 43 A.L.R. 862; Rankin v. S. S. Kresge Co., D.C., 59 F.Supp. 613, aff'd 3 Cir., 149 F.2d 934; Zizi v. Gabriele D'Annunzio Lodge No. 22, etc., 14 N.J.Super. 200, 83 A.2d 334; Randolph v. Great Atlantic & Pacific Tea Co., D.C., 2 F.Supp. 462, enforced Great Atlantic & Pacific Tea Co. v. Randolph, 3 Cir., 64 F.2d 247; Barakos v. Sponduris, supra; Hubbard v. Montgomery Ward & Co., 221 Minn. 133, 21 N.W.2d 229.

■ If the jury or the trier of the facts should find an absence of due care, and should further find that defendant could or should have reasonably foreseen that his negligence could combine with that of a third person, then in such event it is no longer necessary for a plaintiff to prove how long the specific piece of gum, food, etc., forming part of the dangerous general condition was present; constructive knowledge may be presumed from the prior recurring conditions. Defendant then had the affirmative duty of exercising ordinary care to keep the stairway in a safe condition. In the instant case, it was certainly a jury question whether defendant, when it cleaned and inspected only once a day, had used due care to make the premises reasonably safe, having in mind that defendant knew the propensities of its customers to litter the floors and stairway with dangerous substances such as chewing gum. By our holding under the facts of the instant

case, we do not mean to say that a proprietor becomes an insurer or that *res ipsa loquitur* will apply; nor do we change any of the principles of law enunciated in the De Baca, Kitts, Barrans, or Barakos cases, supra. We merely say that each case must be considered on its own facts and that, bearing in mind the facts of this case, plaintiffs had a right to go to the jury on the issue of defendant's negligence, even though they had not, and could not have proven how long the piece of gum remained on the stairs. This is not to say either that a storekeeper must follow each customer about his store, dustpan in hand, to gather up debris. Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N.W.2d 610; Barrans v. Hogan, supra. What is required is that the inviter do what a reasonably prudent person would do under the particular circumstances, either to warn his invitees of any known or foreseeable danger, or to keep the premises reasonably safe in the absence of such warning. This, after all, is not a novel approach to tort liability.

■ We have considered the action of the trial court in setting aside the jury's verdict and granting the judgment notwithstanding the verdict from the standpoint of the legal theory upon which plaintiffs could recover. Insofar as the sufficiency of the evidence is concerned, we hold the jury verdict to be supported by substantial evidence, particularly viewing it in the light

most favorable to sustaining the verdict. Plaintiffs are entitled to have the evidence viewed in its most favorable aspect and to have all inferences resolved in their favor. Merrill v. Stringer, 58 N.M. 372, 271 P.2d 405; White v. Valley Land Company, 64 N.M. 9, 322 P.2d 707; Ferguson v. Hale, 66 N.M. 190, 344 P.2d 703; Bell v. Ware, 69 N.M. 308, 366 P.2d 706.

 Defendant contends that plaintiff, Betty Mahoney, was guilty of contributory negligence. This was submitted to the jury and we have repeatedly held that this is usually an issue for the trier of the facts, unless the facts are such that the minds of reasonable men could not differ. Brown v. Hayes, 69 N.M. 24, 363 P.2d 632; Gutierrez v. Valley Irrigation and Livestock Co., 68 N.M. 6, 357 P.2d 664; Maryland Casualty Company v. Jolly, 67 N.M. 101, 352 P.2d 1013; and Sandoval v. Brown, 66 N.M. 235, 346 P.2d 551.

In the case of slip-and-fall accidents, many courts have taken into consideration the fact that the customer's attention may well be distracted by the displays of merchandise, and are particularly loath to direct a verdict on the issue of contributory negligence. Hallbauer v. Zarfoss, 191 Pa.Super. 171, 156 A.2d 542; Little v. Butner, 186 Kan. 75, 348 P.2d 1022. In Barakos v. Sponduris, supra, we said:

"* * * A customer in a store may assume that the floor is reasonably safe to walk upon and such customer will not be charged with contributory negligence as a matter of law simply because he falls. * * *"

 The only remaining question is whether defendant should have been granted a new trial. We have often said that a motion for new trial is within the sound discretion of the trial court, and the denial thereof ordinarily will not be disturbed on appeal in the absence of an abuse of such discretion. Latta v. Harvey, 67 N.M. 72, 352 P.2d 649; Baros v. Kazmierczwk, 68 N.M. 421, 362 P.2d 798; Minor v. Homestake-Sapin Partners Mine, 69 N.M. 72, 364 P.2d 134. The trial court may grant a new trial if it believes it has committed error, or if the court thinks the verdict is wrong, although supported by some evidence. Marsh v. Illinois Cent. R. Co. (5 C.C.A.1949), 175 F.2d 498.

Defendant also contends that when the trial court granted the judgment notwithstanding the verdict, it necessarily "found all the facts sufficient to grant defendant a new trial." This argument assumes that the judgment notwithstanding the verdict was granted on the basis of a lack of sufficient substantial probative evidence to support the jury verdict. Defendant, for the moment, loses sight of the fact that the trial court could have proceeded on another basis, i. e., the legal theory defendant itself urged, both below and on appeal, that

plaintiffs had to prove actual knowledge or that the particular piece of gum had been on the stairway a sufficient length of time to impute constructive knowledge of its presence to defendant.

Apart from defendant's attack on instruction No. 3, which we will consider in a moment, a careful reading of the motion for new trial, which was combined with the motion for judgment notwithstanding the verdict, reveals that it attacked (1) the sufficiency of the evidence, and (2) alleged that defendant was surprised by plaintiffs' legal approach in presenting the theory upon which recovery must be predicated. Insofar as the substantial evidence question is concerned, we hold that there is sufficient evidence to support both the jury's verdict and the trial court's denial of the requested new trial. Insofar as the element of surprise is concerned, an examination of the record and the briefs in this case would indicate that defendant abandoned this ground.

■ Defendant attacked instruction No. 3 as being "an incorrect instruction of the law of this case as applied to the evidence adduced at the trial hereof." If plaintiffs may recover on the legal theory herein discussed, and if there is substantial evidence in the record to support the jury verdict, then defendant cannot be granted a new trial unless there is error in instruction No. 3 and this alleged error was properly brought to the attention of the trial court. An examination of the instruction shows that it fails to mention the element of proximate cause. Nor is any mention made of the requirement that defendant would be held accountable only if the jury found that, not only was defendant guilty of negligence for not preventing the recurrence of a dangerous condition, but that defendant must have been able to foresee the possibility of his negligence combining with that of a third person. Negligence in cleaning would not be the proximate cause of the injury unless and until the foreseeable negligence of a third person combined therewith to produce the injury. It is true that proximate cause is mentioned in both instructions Nos. 13 and 18 and that all the instructions must be read as a whole. The giving of instructions Nos. 13 and 18, in their present form without restricting them to the situation of a nonrecurring, temporary condition must have greatly confused the jury and made plaintiffs' burden a much greater one. However, this is not an error of which defendant may avail itself. Not having specifically called the attention of the trial court to the actual error contained in instruction No. 3, nor having argued this issue on appeal, defendant is precluded from attacking instruction No. 3 on any proper ground. Sturgeon v. Clark, 69 N.M. 132, 364 P.2d 757, and cases cited therein.

The cause is remanded to the district court with direction to set aside its order of dismissal, to reinstate the verdict of the jury and enter judgment pursuant thereto for plaintiffs.

IT IS SO ORDERED.

COMPTON, C. J., and NOBLE, J., concur.

CARMODY, J., dissenting.

MOISE, J., not participating.

CARMODY, Justice (dissenting).

Sometimes, a dissent relates to only a portion of an opinion; on other occasions, it may express disagreement with the application of a rule of law or the facts. However, now and then, as in the present case, it seems essential to protest to all parts of a decision, both as to the facts and the law. I do so on this occasion, because, in my judgment, three of my brethren are, by their opinion, misapplying the facts, overruling valuable precedents in this state, and announcing a rule of law which is without authoritative support in any jurisdiction in the country.

First, I would controvert the construction placed by the majority on the testimony of the manager of the defendant, particularly that portion set out in the opinion. The majority say that this testimony establishes a recurring condition and that there was a mere once-a-day cleaning and *inspection*. Considering the quoted testimony in the light most favorable to the plaintiff, the most that can be said is that it establishes that gum was found on the stairs "on more than one occasion." This is hardly a recurring condition, such as was found to exist in a few of the cases relied upon by the majority, which will be hereinafter discussed. However, even though quoting the testimony, the opinion completely ignores the statement of the manager that he inspected the store *from time to time on Saturday*. Only by disregarding this testimony can it be implied that the store was cleaned and inspected not more than once each day. Also, to construe the word "daily" to mean "only once each day" is neither in accordance with the testimony, nor is such a construction in accordance with the definition of the word "daily." According to Webster's New International Dictionary, Second Edition, "daily" means "every day" or "day by day." I submit that the construction placed by the majority on the testimony is contrary to the record in the case. Absent such a construction as the foundation of the opinion, the entire theory upon which the decision is based would collapse.

In the second place, the majority cite and quote from several New Mexico slip-and-fall cases, at least two of which (De Baca v. Kahn, 1945, 49 N.M. 225, 161 P. 2d 630; and Barrans v. Hogan, 1956, 62

N.M. 79, 304 P.2d 880) are determinative of the questions involved, even if we were to adopt what I believe is the strained construction of the testimony taken by the majority. However, the majority refuse to follow the clear rule set out in the De Baca case, wherein it was said (quoting from Rom v. Huber, 1919, 93 N.J.L. 360, 108 A. 361):

" 'The defendant is not an insurer of the safety of his patrons against accidents. It must appear that the condition which produced the fall had either been in fact brought to the previous notice of the defendant, or, failing in proof of such actual notice, the condition had existed for such a space of time as would have afforded the defendant sufficient opportunity to make proper inspection as to the safety of the place.' "

The Barrans case is even closer factually to the one which we are considering than the De Baca case, inasmuch as it involved a fall on a particle of food. We do not know from the opinion whether the food was dropped by a third party or by an employee of the cafeteria, but, in any event, this court reversed and denied recovery, because the evidence was wholly lacking as to knowledge, or any inference of knowledge, of the dangerous condition on the part of the defendant at the time of the accident. Actually, the Barrans case answers the problem involved herein, with the following statement:

" * * * To say that the defendant did have knowledge that particles of food might fall to the floor at any time, is not sufficient to charge him with negligence as the cause of plaintiff's misfortune."

The majority also mention Kitts v. Shop Rite Foods, Inc., 1958, 64 N.M. 24, 323 P.2d 282; Barakos v. Sponduris, 1958, 64 N.M. 125, 325 P.2d 712; and Gonzales v. Shoprite Foods, Inc., 1961, 69 N.M. 95, 364 P.2d 352. However, all three of these cases concerned claimed negligent acts on the part of the defendant's employees, and therefore involved constructive notice on the part of the employer; so they are not in point as to the instant case, as we are here concerned with the effect of the act of a third party and when responsibility devolves upon the storekeeper for such an act.

In any event, it seems that my brethren refuse to recognize or follow the precedents of this court, and therefore seek support from other jurisdictions. In so doing, they add an additional element to their hypothesis, namely, that of foreseeability, or anticipated action or non-action, as establishing negligence. Of course, to me, this is not warranted, nor supported by the evidence. I fail to see how the fact that there may have been gum on the stairs on other occasions has anything to do with the fact that

the unfortunate plaintiff here fell upon a particular piece of gum on Saturday, the 9th day of May, 1959. There is no showing in the record that any previous accident occurred, nor is there anything except conjecture and speculation that the gum upon which the plaintiff slipped was on the steps for any amount of time, whether seconds, minutes or hours. There was therefore no evidence from which the jury could determine that the defendant breached its duty to discover and remedy the condition within the time and manner required of a reasonable person.

The difficulty with the approach made by the majority is that the cases cited do not support their position, absent a showing by the plaintiff that the cause of the fall existed for such a length of time that the defendant should have taken corrective steps. There are statements in some of the cases cited which, taken by themselves, would seem to support today's opinion, but other language in these same cases, not quoted by the majority, makes it apparent that the time factor is all-important and that the burden is on the plaintiff to show that the condition which caused the fall existed for such a length of time that the proprietor, in the exercise of ordinary or reasonable care, should have known of it and corrected it. Even the cases from California, upon which my brethren seem to place their greatest reliance, require that the plaintiff must produce more than a mere showing of negligent or sloppy housekeeping, in order to recover from the storekeeper for the acts of third persons.

It is, of course, recognized that the cases involving defects in the physical plant, such as improper lighting, worn steps, lack of handrails, and the like, are in entirely different categories than those involving customers' dropping trash. See, 61 A.L.R.2d 110, § 7(a), at 124. In the physical-plant-defect cases, constructive notice is imputed, from the mere existence of the defect, and the owner's negligence is continuing in allowing the defect to exist. Contrariwise, however, with the throwing of trash, or gum as in this case, a general knowledge of the propensities of customers to throw trash on the floor does not make the owner negligent—the negligence is the leaving of the trash on the floor for an unreasonable time, after it is known or should have been known. The burden is always on the plaintiff, in trash situations, of showing the time element, either as to the existence of the particular item, or, at least, a failure to make reasonable inspections. Unless the plaintiff can show this, there is no standard from which the jury can determine what was reasonable or unreasonable, other than by speculation and guesswork.

As stated above, even the California cases recognize this requirement. Thus, in Bridgman v. Safeway Stores, Inc., 1960, 53 Cal.2d 443, 2 Cal.Rptr. 146, 348 P.2d 696,

cited by the majority, the California Supreme Court said:

"It obviously follows that the owner of a store must make reasonable inspections of such portions of his premises as are open to his customers, and, in this connection, it has been held that evidence that an inspection had not been made *within a particular period of time prior to an accident* may warrant an inference that the defective condition existed long enough so that a person exercising reasonable care would have discovered it. (Here follow three court of appeals cases in which the supreme court points out the time during which there was no inspection.) * * * As declared in these cases, it is ordinarily a question of fact for the jury whether, under all the circumstances, the defective condition *existed long enough* so that it would have been discovered by an owner who exercised reasonable care." (Emphasis added.)

The above statement immediately follows a statement quoted in the majority opinion and must be considered as a part of the California rule.

In the instant case, there is *no* evidence as to when the last inspection was made (statements in the briefs to the contrary are not supported in the record), nor was any effort made by the plaintiff to prove knowledge, or constructive knowledge, on the part of the defendant, of the existence of gum or other dangerous condition, so that there might have been an opportunity to correct it.

Although understandably not cited by the majority, a very recent case from the District Court of Appeals of California, Perez v. Ow, 1962, 19 Cal.Rptr. 372, makes this very pertinent statement:

"Plaintiff had the burden of producing evidence of the existence of the condition complained of for at least a sufficient time to support a finding that defendants had constructive notice thereof. This she failed to do."

In this last-mentioned case, the court cites several other California slip-and-fall cases, in order to distinguish them from the case therein decided, in each of which the time question was discussed, and it is pointed out how, in some instances, the time requirement had been satisfied, and, in others, not.

It is not my purpose to attempt to discuss each of the cases cited by the majority, because to do so would unduly lengthen this dissent. However, with reference to the quotations from Sattler v. Great Atlantic & Pacific Tea Company (D.C.W.D.La. 1955), 18 F.R.D. 271, and Whalen v. Phoenix Indemnity Co. (5 C.C.A.1955), 222 F.2d 121, both cited in the opinion, it is true that the Whalen case, as stated, was decided on

the basis of *res ipsa loquitur,* whereas in the Sattler case the district judge determined that the doctrine did not apply. Nevertheless, in the Sattler case, a directed verdict was granted for the defendant, and the court's comment as quoted by the majority was not necessary for the decision. Many of the other cases cited by the majority relate to structural defects, and, as stated above, in such cases a different rule applies than in those involving the dropping of refuse by third parties.

There is no question but that it is the duty of a storekeeper to maintain the store's facilities so that they are reasonably safe for invitees. With this statement I have no quarrel, nor with the statement by the majority that a storekeeper is not an insurer and that *res ipsa loquitur* does not apply. The opinion cites cases in support of that. Strangely enough, however, two of the cases so cited relate to slipping and falling on a wad of gum, and in both of these cases it was held that the plaintiff had *failed in her proof as to the length of time that the condition had existed,* so as to constitute constructive notice thereof. These two cases are Montgomery Ward & Co. v. Hansen, 1940, 282 Ky. 188, 138 S.W. 2d 357; and Saari v. S. S. Kresge Company, 1960, 257 Minn. 290, 101 N.W.2d 427.

The opinion cites an additional California Appeals case to support the statement that "Negligence may be established by circum- stantial evidence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts." This is the case of Mc-Kenney v. Quality Foods, Inc., 1957, 156 Cal.App.2d 349, 319 P.2d 448. This case is not authority for the position taken by the majority, inasmuch as the evidence in that case showed that no inspection had been made for a period of more than two hours. Here, again, the California court reaffirmed the holdings of the courts in that jurisdiction, that the time element must be shown. Although it may be somewhat repetitious, there is no such evidence as to the time in the instant case, and I have serious doubt as to any showing of actionable negligence at any time, let alone on the day in question.

To me, the outstanding fallacy of the opinion is that portion which states, in part, as follows:

"* * * the rule most conducive to justice is that rule which holds that, absent a showing of due care, plaintiff need not prove that defendant had actual or constructive knowledge of the specific item forming part of that pattern of conduct, recurring incident, etc."

Several cases are cited in support of this statement, which must be briefly analyzed, to show that they actually do not support the statement made (the actual citations of

these cases are omitted, because they appear in the majority opinion):

Dillon v. Wallace (Cal.1957): The lack of inspection for more than two hours was of great importance.

Markman v. Fred P. Bell Stores Co. (Pa.1926): The dangerous condition was apparently caused by acts of the employees, not third persons.

Rankin v. S. S. Kresge Co. (W.Va. 1945): The defendant failed to have the janitor clean up after the presence of from 400 to 450 school children, who had bought hot dogs and ice cream. As a result, until the janitor returned from lunch, the store was in a rather hectic condition. (This case is probably the only one cited by the majority which in any sense supports the statement made by them, and I feel that it is obviously distinguishable.)

In Zizi v. Gabriele D'Annunzio Lodge No. 22, etc. (N.J.1951), the question of time for constructive notice was all-important.

Randolph v. Great Atlantic & Pacific Tea Co. (Pa.1932) was again a situation created by the employer through acts of an employee.

Barakos v. Sponduris (N.M.1958) has already been discussed and has no bearing.

In Hubbard v. Montgomery Ward & Co. (Minn.1946), the court reversed for failure to give a requested instruction, but, in the opinion, stated "that defendant's negligence in this case must be predicated upon notice of the dangerous substances allowed to accumulate on its floor. It is true that, absent any evidence from which such notice could be found, plaintiff would have no case."

My reason in discussing these cases is to make it obvious that they do not support the statement made by the majority, and in not one of them is it said that plaintiff's burden of proof is reduced, as claimed in the opinion. As I stated, this, to me, is the most glaring vice of the opinion, that the court is today eliminating as a part of the plaintiff's burden of proof the requirement that the plaintiff must show actual or constructive knowledge on the part of the defendant. Although the opinion voices what might be termed lip-service to the continuation of the rule that *res ipsa loquitur* does not apply, the sum total effect of the opinion is to apply the doctrine. The effect of the opinion is that, if the plaintiff can show the possible presence of negligence on the part of the defendant, that then the plaintiff need proceed no further and the burden will shift to the defendant to prove that it could have had no knowledge, constructive or otherwise, of the con-

dition causing the injury. The majority say, in effect, that, in slip-and-fall cases, negligence *only* is sufficient without any showing of proximate cause. To me, this is not and cannot be the law. The majority, by this decision, reached a result contrary to the law of New Mexico, which has been followed since De Baca v. Kahn in 1945. The consequence of today's opinion is to whittle away at a rule long established in this jurisdiction. This of itself might not be so important, if a change of law were necessary or required. However, the mere fact that the unfortunate plaintiff in this case may have suffered severe injuries does not warrant making what I consider bad law.

Although there are literally hundreds of decisions throughout the United States dealing with slip-and-fall cases, many of which are concerned with debris on stairways, I do not feel it is proper to unduly extend this dissent by attempting to cite all of them. Nevertheless, I do desire to call attention to the following decisions, all of which are closely in point and support my position, and most of which have facts which are nearly identical with those in the instant case; with the comment, however, that in some instances the item allegedly slipped upon was something different than a piece of gum. These cases, together with the substance creating the condition in parentheses, are as follows:

Montgomery Ward & Co. v. Hansen, supra (gum);

Saari v. S. S. Kresge Company, supra (gum);

Brown v. S. H. Kress Co., 1941, 66 Ga.App. 242, 17 S.E.2d 758 (banana peel);

Relahan v. F. W. Woolworth Co., 1937, 145 Kan. 884, 67 P.2d 538 (paper and debris);

Cartoof v. F. W. Woolworth Co., 1928, 262 Mass. 367, 160 N.E. 109 (sticky substance);

Whitehead v. Erle P. Halliburton, Inc., 1942, 190 Okl. 120, 121 P.2d 581 (waste paper);

Stowe v. S. H. Kress & Co. (5 C.C.A. 1947), 164 F.2d 593 (banana peel);

Sellew v. Tuttle's Millinery, Inc., 1946, 319 Mass. 368, 66 N.E.2d 26 (debris).

See, also, Annotation 61 A.L.R.2d 174.

The above cases and the two immediately following, in my judgment, state the law as it is and has been for many years, and should be followed in the present instance.

The majority cited F. W. Woolworth Co. v. Goldston (Tex.Civ.App.1941), 155 S.W. 2d 830, and attempted to distinguish the same. Nevertheless, I am respectfully of the opinion that the case cannot be distin-

guished and is very close factually to the instant case. The Texas court stated:

> " * * * Mrs. Goldston was not injured because of the failure of appellant to sweep, clean or inspect its floor. Her injury resulted from the slipping of her foot when she stepped upon the banana peel and the presence of the banana peel, not the failure to sweep, clean or inspect the floor, was the proximate cause of her injury. * * *"

This statement fits the present case like a glove, and, to me, is legally unanswerable.

The majority has failed to mention Parks v. Montgomery Ward & Co. (10 C.C.A. 1952), 198 F.2d 772, which, in an opinion by Judge Bratton, stated:

> "There was no showing at to how long the condition had existed, whether defendant had actual knowledge of its existence, or whether the floor had been mopped from time to time during the morning. * * * In short, plaintiff failed to establish actionable negligence on the part of defendant."

By failing to follow the principles enunciated by practically all of the reported cases, today's opinion, in effect, applies the *res ipsa loquitur* doctrine and will certainly tend to make a store proprietor an insurer. Although the majority say that a storekeeper need not "follow each customer about his store, dustpan in hand," the effect of today's decision is that, in order to protect himself from having the case submitted to a jury, he will, from a practical standpoint, have to show that he has preceded each customer with broom, scraper and dustpan in hand, so that there will be nothing in the path of the customer which might cause a fall; and, even then, under today's decision, the trial courts may be reluctant to take the case from a jury.

In conclusion, I also differ with the majority, regardless of their disposition of the main points on appeal, in remanding the case with direction to reinstate the verdict and enter judgment for the plaintiffs. This court is substituting its judgment for that of the trial judge who heard the case and who, for whatever cause, determined that the verdict should be set aside. The court holds that there is sufficient evidence to support the jury's verdict. I, of course, disagree. But, even so, I doubt the propriety of the court's making the order which it does, in the face of the trial judge's action.

For all of the above reasons, I respectfully dissent.