VIRGIL DENNIS D/B/A HAND-I-PAK *v.* SYLVIA CRABTREE ET AL

5-4948                                    444 S. W. 2d 251

Opinion delivered September 8, 1969

*Wright, Lindsey & Jennings,* for appellant.

*Gaughan, Laney, Barnes & Roberts,* for appellees.

CONLEY BYRD, Justice. The appellee Sylvia Crabtree on Sept. 25, 1967, slipped and fell in the Hand-I-Pak grocery store operated by appellant Virgil Dennis in Camden, Arkansas. As a result of the fall Mrs. Crabtree suffered personal injuries for which she had expended in excess of $3,000 for medical expenses. The jury returned a verdict for $3,500. From the judgment entered thereon, appellant Virgil Dennis appeals contending that the trial court erred in not directing a verdict in his favor.

Mrs. Crabtree entered the store about 4 o'clock to buy some cat food. After passing by the check-out stand, five or six feet from the door, she turned to her right and entered the second aisle between the shelves or gondolas erected to display merchandise. After walking a few steps down the aisle she slipped and fell. When she yelled for help Mr. Dennis came to her aid and helped her to sit up. While she was sitting, Mr. Bill Jones, a store employee, came by and found a bottle cap 18 inches from her right foot. On cross-examination Mrs. Crabtree testified that she did not know what she slipped on when she fell and that all she knows is that she did slip and that after she fell there was a bottle cap there. She stated, "Well, there was something under my foot, yes, when I went down, because when I took that step my foot just slipped real quick and I was down."

Mr. Jones described the store as having only one entrance. According to him a person entering the store would find the check-out stand some five or six feet inside the store. Behind the check-out stand were gondolas or shelves, 23 feet 6 inches long, erected to hold canned goods and so constructed as to permit passage around the end of the gondolas before reaching the wall or rear of the building. The person entering the store would find to his left a coke box and magazine rack, and to the right a shopping cart used as an empty drink bottle drop. Mr. Jones testified that after he heard Mrs. Crabtree yell, "Somebody help me", he finished checking

his customer and went to see what was the matter. Some 18 inches from Mrs. Crabtree's foot he found a bottle cap which he put in a waste container. He described the bottle drop as being 30 feet from the point where Mrs. Crabtree fell. With reference to the bottle drop and its usage Mr. Jones testified:

"Q.    Bill, with regard to people coming in the store and placing, say, empty bottles in this hamper here, most generally how do people carry them in to be placed in the hamper?

A.    Oh, they're usually in cartons. Sometimes they bring them in paper bags and sometimes they're just loose in their hands.

Q.    Have you ever seen any bottle caps or other extraneous material deposited in there with these bottles?

A.    Occasionally you do.

Q.    Is this hamper such or so constructed that, say if a bottle cap were placed in the hamper —what would happen to that bottle cap?

A.    It would lodge in the bottom of the buggy unless it fell on the outside of it.

Q.    Is there any possibility that it would fall through the bottom of the buggy?

A.    If it went up and down like that.

Q.    There is that possibility?

A.    It's a possibility."

Jones testified that he had swept the floor during the month of September, 1967, and did not recall sweeping up any bottle caps. This included the area around the

bottle drop. He did find bottle caps occasionally around the coke machine.

Johnny Strickland testified that he had been in the store on several occasions and had seen bottle tops to the left of the check-out counter near the Pepsi machine. That about the time Mrs. Crabtree fell he had been in the store and got a Pepsi from the machine and the bottle top holder was full and caps were on the floor.

Appellant contends that Mrs. Crabtree had the burden of proving that a dangerous condition existed which proximately caused her injuries and, second, that the condition existed sufficiently long for appellant to be chargeable with negligence in having failed to discover it. This argument is based upon our holdings in *Owen* v. *Kroger Co.*, 238 Ark. 413, 382 S. W. 2d 192 (1964), and *Jackson* v. *Hemphill*, 245 Ark. 699, 434 S. W. 2d 818. Appellee's argument is as follows:

> "Appellee submits that a notice requirement is indeed proper; but in a proper case, such as this one, the notice requirement does, or at least should, refer to notice, actual or constructive, of the general condition of the premises, not of the specific object or substance on the floor."

Appellee's argument is based upon the holdings of courts in *Bozza* v. *Vornado, Inc.*, 42 N. J., 355, 200 A. 2d 777 (1964), and *Mahoney* v. *J. C. Penny Co.*, 71 N. M. 244, 377 P. 2d 663 (1962).

In the latter case it was held:

> "Where the dangerous condition is not an isolated one . . . but is foreseeable because of a pattern of conduct, a recurring incident, a general condition, or a continuing condition, then we hold that the rule most conducive to justice is that rule which holds that, absent a showing of due care, plaintiff need not prove that defendant had actual or constructive

knowledge of the specific item forming part of that pattern of conduct, recurring incident, etc. . .''

Based upon these authorities, Mrs. Crabtree argues:

''This is merely a case where the jury was properly permitted by the Trial Court to determine that appellant was negligent in (1) providing a receptacle that allowed bottle caps to fall through it to the floor; and (2) in locating the receptacle in the most heavily traveled portion of the premises.

''There was certainly evidence from which the jury could have reasonably inferred that (1) the plaintiff fell on a bottle cap; and (2) the bottle cap came from the receptacle. The jury could have, and in fact did, further find that the type of receptacle and its location created an unreasonable risk of hazard to the plaintiff. Hence, notice, actual or constructive, of the length of time the bottle cap remained on the floor would be immaterial to this case.

''In this regard, Appellee submits that it is noteworthy that the defendant also had actual notice of the condition, i. e., the type of receptacle in use and that caps fell through it to the floor. Likewise there is no evidence whatsoever of any customer having been in the store at the time of the fall, or at any time immediately, or even shortly, prior to the fall (evidence, we would point out, which always is going to be in the exclusive possession of the occupier of the premises).''

We agree with Appellant that the trial court should have directed a verdict. We are unable to find in the testimony any showing of a dangerous condition existing around the bottle drop because of a pattern of conduct or recurring incident as was the situation in the *Bozza* and *Mahoney* cases, *supra*. Neither can we find any evidence relative to how long the bottle cap was

permitted to remain on the floor. In this regard we note that contrary to appellee's argument there is evidence of other customers having been in the store at the time of the fall.

Reversed and dismissed.