McMillin *v.* Bearden.

5-3181                                                 376 S. W. 2d 665

Opinion delivered February 17, 1964.
[Rehearing denied April 13, 1964.]

*Smith, Sanderson, Stroud & McClerkin,* and *Lowe, Moore & Webber,* for appellant.

*G. W. Lookadoo, Shaver, Tackett & Jones,* for appellee.

Carleton Harris, Chief Justice. Appellant, George Morehead, on May 1, 1962, was operating a caterpillar motor grader along a portion of what is known as the Boyd Road, located in Miller County. The grader was the property of appellant, McMillin-Burkett Construction Company, by whom Morehead was employed. The part of the Boyd Road pertinent to this cause was approximately ten or eleven miles in length, and was being used by gravel trucks to haul gravel from a pit near Genoa to U. S. Highway 71, where construction work was in progress. Accordingly, this portion of the Boyd Road was being subjected to heavy traffic, and Morehead was operating the motor grader up and down the heavily traveled portion as a matter of keeping the road in as good

condition as possible. Some thirty or thirty-five gravel trucks were being operated on the day in question.

At about 8:00 o'clock A.M., appellee, Henry Bearden, twenty years of age, was driving a loaded gravel truck, and proceeding on the Boyd Road toward its intersection with Highway 71. The truck was owned by his step-father, Roy Byrd. Morehead, with his grader traveling toward the pit, was blading the road on his (Morehead's) left-hand side. Bearden, traveling on his right side of the road, collided almost head-on with the motor grader, the truck striking the right front part of the grader. Suit was instituted by Morehead and McMillin-Burkett, seeking to recover damages for alleged personal injuries, and damage to the grader, respectively. Bearden and Byrd answered, denying liability, and both likewise filed a cross-complaint against appellants, seeking, respectively, damages for alleged personal injuries, and damage to the truck. The parties waived trial by jury, and the cause was tried before the court, sitting as a jury. Thereafter, the court filed a memorandum opinion, finding, as follows:

"The Court finds without hesitation that there was an abundance of negligence on the part of both George M. Morehead and Henry Ellis Bearden. The evidence preponderantly shows the involved road to have been winding, rolling, rough and very dusty. On this stretch of approximately ten miles, thirty to thirty-five gravel trucks were operating back and forth from the pit. One can reasonably assume that there was also some public traffic on this road, it being of course open to the public and habitated. It is undisputed that when the road was dry this battery of trucks threw up dense clouds of dust which were bound to seriously hamper the vision of the drivers for some distance ahead. Under these conditions George M. Morehead was operating the grader on the wrong side of the road, in clear violation of a well-known rule of the road. An operator of his years experience should certainly be aware of the probable danger to himself and to others. This fact is especially true in view of

his operating the grader on the side of the road which belonged to traffic approaching him.

"Sheriff Birtcher estimated the road to be 18 feet wide at the point of impact, and Morehead estimated it to be approximately 20 feet in width. With the grader consuming approximately 10 feet of the traveled portion, at least the larger trucks would have fairly tight squeeze in passing him at points similar to the point of impact.

"When all of the above recited facts are considered as a whole, it is clearly convincing that Morehead was negligent and that his negligence was certainly a proximate cause of the involved impact.

"Henry Ellis Bearden, by his own testimony establishes his negligence. He was an experienced driver and had been on this particular haul for several weeks. Approaching him was a 10-yard trailer truck and which he says stirred up a terrific amount of dust. As an experienced driver he was bound to know that for some little distance after meeting and passing the other truck he would, for all practical purposes, be blinded to any reasonable vision ahead. In fact he stated that in situations of this kind a driver could tell he was in the road only by the feel of the wheel. In the face of this approaching hazard known to him he estimates his speed to have been approximately 40 miles per hour. Such speed in the face of blinding conditions violated not only the reasonable maximum speed law of the road, it furthermore violated the law requiring drivers to keep their vehicle under such control as to be able to check the speed or stop the vehicle when danger is reasonably to be expected. His approximation of speed is verified by the distance his truck traveled with the wheel assembly knocked out and by the severe damage done the heavy maintainer.

"It is the finding of the Court that both operators were culpably negligent and there is no difference in degree of negligence committed by the two drivers.

"George M. Morehead was the agent, servant and employee of McMillin-Burkett Construction Company

and acting within the course of his employment at the time of the impact. The same status existed between Roy Byrd and Henry Ellis Bearden. Therefore the negligence of each driver is chargeable respectively to their employer. None of the parties are entitled to recover in this case. Each of the litigants are chargeable with the Court costs initiated by them.

"Allegations of negligence are based on the facts that (1) the road was not kept watered by McMillin-Burkett, and (2) that no warning signs—such as flags, placards or lights—were utilized by the contractor to protect others against the operation of the road maintainer. These contentions are not helpful to Byrd and/or Bearden. Both had been on the haul several weeks and were aware (1) that sprinkling operations had been confined to stretches of road in front of houses and (2) that the maintainer was being used up and down the road to facilitate the haul. They are not in the category of some member of the traveling public who might traverse the road wholly unaware of the operations then being carried out. The actionable negligence in this case is shown to have been confined to Morehead and Bearden."

Judgment was then entered, denying recovery to all parties. From the judgment, appellants bring this appeal, and appellees have cross-appealed. Appellants content that the court erred in finding Morehead guilty of negligence, or, if guilty of negligence, to the same degree as Bearden, and like contentions are presented by appellees.

It is certain that, in holding Morehead guilty of negligence, the court reached one erroneous conclusion, hereafter italicized, namely, that appellant driver "was operating the grader on the wrong side of the road, and *in clear violation of a well-known rule of the road.*" Ark. Stat. Ann. § 75-423, Sub-section (d), Repl. 1957, provides as follows:

"The provisions of this act [Act 300 of 1937, regulating traffic on highways, including the so-called 'Rules of the Road'] shall not apply to persons, teams, motor ve-

hicles and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

Apparently this provision, or one substantially the same, is contained in the motor vehicle statutes of a large number of the states,[1] and several cases are found relative to some phase of the provision. In *McNabb* v. *De-Launay*, 354 P. 2d 290, the Oregon Supreme Court had occasion to comment upon an almost identical statute, as follows:

"ORS 483.032(2) provides that certain enumerated sections of the motor vehicle code, including those generally referred to as the rules of the road, do not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work above, below, or upon a street or highway, but that they shall apply to such persons and vehicles when traveling to or from such work.

"Plaintiff contends that the above-mentioned statute does not apply to Perkins because he was, at the time of the accident, traveling from such work, and was not actually engaged therein.

"The uncontradicted evidence showed that Perkins had dumped a load of hot asphalt about 100 feet away from the point where he was making the turning maneuver. He testified that he moved down the road 100 feet to allow the roller and grader space in which to work. Turning his truck around was a necessary part of his work. * * * Perkins was well within the contemplated protection of the statute."

In *Sturgeon* v. *Clark*, 364 P. 2d 757 (New Mexico), the statute was mentioned, but the exemption not allowed, because the court found that the defendant was not actually engaged in work upon the surface of the highway at the time of the mishap, but was only driving from one point to another. The court said:

[1] Among others, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Michigan, Minnesota, Montana, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Utah, and West Virginia.

"We are clear that the legislature incorporated § 64-15-4(b), N.M.S.A. 1953, into the statute in recognition of the fact that in constructing, repairing and maintaining highways there are circumstances under which men and equipment must be present on the surface of the highway without being held to comply with the rules of the road generally binding. However, while providing for performing necessary work without being in violation of statutes otherwise applicable, they were careful to restrict the exemption to situations where actual work was being performed on the surface. It is not for us to extend the application beyond the clear language used.

"Defendant relies on a number of cases from other jurisdictions, all of which we find easily distinguishable by virtue of the fact that they involved actual work on the surface of the highway. We make mention of only one. *Johnson* v. *Bergquist*, 184 Minn. 576, 239 N. W. 772, is a case where the equipment was standing on the highway with its motor running while the workmen were adjusting the grader blade preparatory to using it on the surface of the highway, when the accident occurred. The court held that under the facts, this constituted work on the surface so as to bring the case within an exemption like that in § 64-15-4(b), N.M.S.A. 1953. This case is as easily distinguished under its facts from the case sub judice as the others cited by defendant.'"[2]

Of course, here, Morehead was admittedly working on the surface of the road. In view of our statute, we think it clear that the mere fact that Morehead was op-

---

[2] Actually, some courts, even before the adoption of such a statute, held that the mere fact that a drag machine engaged in working the road was on the left-hand side, did not constitute negligence. The Georgia Court of Appeals, in the case of *Mathis* v. *Nelson*, 54 S.E. 2d 710 (1949), stated:

"It may often be necessary to work a road machine on the left side of the road, or even in such a position as to completely block the road and, if sufficient precautions were taken to warn approaching motorists, this act could not be deemed actionable. * * * While it might, as a necessary incident to the working of roads, be necessary to proceed otherwise than in the ordinary direction of traffic, there would be no such excuse for failing to have the tractor properly lighted at a time of day when it was still dark."

Subsequently, Georgia passed a statute similar to the Arkansas statute.

erating his grader upon the left-hand side of the road, was not, in itself, sufficient to make this appellant guilty of negligence.

It is not entirely clear from the trial court's opinion the extent to which Morehead's operation of the grader on the left-hand side, in (as was held) violation of a rule of the road, influenced the court in its findings. Certainly, it would appear to have influenced the findings to some degree, for it is emphasized by being mentioned twice. Minus this erroneous conclusion, we do not know whether the court would have still found Morehead guilty of negligence, or whether, if such a finding had been made, appellant would have been found negligent to the same degree (equally negligent with Bearden).

It follows that the judgment on direct appeal must be reversed.

As to the cross-appeal, we think unquestionably that the trial court's findings were supported by substantial evidence. Admittedly, in traveling toward Highway 71, Bearden, before striking the grader, met a trailer truck which threw up a big cloud of dust. Bearden stated:

"It throwed dust in my face, and the roads were dusty, and anyhow, I had to turn my windshield wipers on to clear the dust, and by the time the dust had cleared, I was right up on McMillin-Burkett's road maintainer. And the only thing I could think of then was miss the maintainer, and my right rear caught his right front."

Subsequently, he stated that he could not see to the front at all because "the dust had blinded me." Bearden testified that he was operating his loaded gravel truck at a speed of approximately 40 miles an hour when he met the other truck. From the testimony:

"Q. What did you do right after you passed the truck?

"A. Well, I had slowed—I mean, in other words, I took my foot off the foot feed to let it slow down where I could see.

"Q. But you didn't touch the brake until you saw the maintainer, did you?

"A. I had my foot on the brake, sir, but I . . .

"Q. Did you apply the brakes—let's put it this way. Did you apply your brakes before seeing the maintainer?

"A. No, sir, I did not.

"Q. I believe you testified here that it was so dusty that you couldn't even tell which side of the road you were driving on?

"A. Well, that is true, sir.

"Q. Is that true?

"A. In other words, I mean—

"Q. Could you even see whether you were on the road or not?

"A. Well, there's certain ways to tell by the feel of the wheel.

"Q. In other words, you were just as blind as though you were driving in the dark without lights, is that right?

"A. Yes, sir.

"Q. You couldn't even see the shoulders of the road —the ditches?

"A. No sir, I couldn't see them.

"Q. You took your foot off the gas and rested it on the brake pedal, but didn't apply the brakes until you saw the maintainer, is that correct?

"A. That is correct."

Of course, Bearden was familiar with the fact that the maintainer was being operated on the Boyd Road, and had earlier, on the morning of the collision, observed the grader somewhere between one and three miles from the scene of the collision.

As stated, we think there was substantial evidence to support the findings of the Circuit Court, and there is, accordingly, no merit in the cross-appeal.

The judgment is reversed, and the cause remanded for a new trial on all issues.